### Francis M. Rollins *versus* Prince B. Mooers.

When the owner of a dwellinghouse, having a right of entry therein, but in which the plaintiff had recently been dwelling, and which he and his family had then left, finds the doors open and no one in the house, he may lawfully enter into the possession thereof, remove what furniture there was therein belonging to the plaintiff, in a careful manner, and store it safely near by for his use; and the owner may afterwards lawfully retain the pos- session thereof, thus acquired.

It is not necessary to the validity of an extent of an execution upon land, under Stat. 1821, c. 60, § 27, that the land set off should be described by measure and by monuments. It is sufficient, if it be so described, "that the same may be distinctly known and identified." Inconvenience in as- certaining the boundary, if it be susceptible of ascertainment, can form no objection to the levy.

Where the officer certifies, that the appraisers of land set off on execution. were indifferent and discreet men, the return is conclusive of that fact, when the validity of the extent is in question. The remedy, if any there- be, for an erroneous certificate in that respect, must be sought against the certifying officer.

In the absence of any proof on the part of the grantee of the payment of the consideration for a conveyance of land, other than that it was so expressed in the deed, a jury are authorized to infer, that the conveyance was fraudu- lent and void as to creditors of the grantor, on proof that he was at the time of the conveyance embarrassed and indeed insolvent; that it was a con- veyance of all his real estate; that it was to two individuals, neither of whom wanted the estate for his own occupation; that both grantees were sons-in-law of the grantor; and that he was permitted to continue his occu- pation afterwards as before the conveyance.

If a conveyance be made to secure for the grantor and his wife a mainten- ance from the grantee, it is fraudulent and void as to prior creditors of the grantor.

At the trial, before Whitman C. J. after the examination of many witnesses, and the introduction of deeds and copies of levies of executions, it was agreed, that upon that testimony and those papers, or such portion thereof, as should be consid- ered legally admissible, the Court should have the liberty to draw such inferences as a jury might draw, and enter such judgment in the premises, as they should determine to be pro- per. The testimony of the witnesses, and copies of the papers, appear at length in the report. What was proved in the case, in the view taken of it by the Court, appears in the opinion.

Rollins *v.* Mooers.

*H. A. Smith* argued for the plaintiff, contending, among other grounds, that the defendant, at the time of the alleged trespass, had no right of entry into the premises; and that even if he had such right, he had no right to enter forcibly, as he did, and expel the plaintiff from the possession by force. At the time of the levy of the executions, the plaintiff had no such title as could be taken on execution. He had but the title of a mortgagee. The counsel examined the title which the plaintiff once had, and the title of his lessors to the premises. He also contended, that if there was any title to the premises in the plaintiff, which could have been taken by the levy of an execution, that the levies, under which the defendant claimed title, were fatally defective, and were wholly void. The grounds of objection are noticed in the opinion.

*Wells*, on the same side, cited 2 Shepl. 58; 8 Shepl. 138; 2 East, 183; 4 East, 55; 1 Phil. Ev. 412; 12 Mass. R. 439; 14 Mass. R. 245; 4 Mass. R. 702; 21 Pick. 283; 1 Greenl. 89; 1 Shepl. 25; 16 Mass. R. 1; 9 Mass. R. 92; 8 Greenl. 284.

*Bradbury*, for the defendant, contended, that each of the four levies, under which the defendant claimed, was valid in law; and replied to the argument for the plaintiff.

In support of his general position, applicable to all the levies, that the description of the land in the return was sufficient, if the land was so described, that a person could by reasonable diligence ascertain its location, he cited 6 Greenl. 127 and 162; 12 Pick. 142.

In support of his position, that the conveyance from the plaintiff was fraudulent and void as to creditors, he cited 4 Greenl. 195; 1 Dane, 668; 19 Pick. 231.

*Wells*, for the plaintiff, replied.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is an action of trespass *quare clausum.* The general issue is pleaded, and a brief statement filed setting up soil and freehold in the defence. As there is no

question as to the identity of the close the brief statement is unnecessary. Soil and freehold might be given in evidence under the general issue.

The plaintiff, to establish his title to the *locus in quo,* introduced a lease made to him, in December, 1841, by Harrison A. Smith; and a mortgage made of the same, in 1821, by Otis N. & Howard H. Getchell to Jane Smith; and an assignment thereof by Jane Smith to the plaintiff; and by the plaintiff to H. A. Smith, in December, 1841; and also a release of all right and title to the same to H. A. Smith, by Howard H. & Marietta Getchell, to whom the right of redemption, under Otis N. & Howard H. Getchell, was supposed to belong, made on or prior to December 8, 1841. The plaintiff also introduced a deed from himself, purporting to convey in fee simple, with covenants of general warranty, the *locus in quo* to H. A. Smith, and George C. Getchell, bearing date May 11th, 1840.

The acts relied upon as constituting the trespass were, that, at or about the time stated in the declaration, the defendant, with two others, went to a dwellinghouse, situated on the *locus in quo,* in which the plaintiff had some time previously been dwelling, and from which he had removed, and finding the doors open, and no one in the house, they removed what furniture there was there, belonging to the plaintiff, in a careful manner, and stored it safely near by, for his use; and afterwards kept possession of the house, and of the *locus in quo.*

The defendant claims under four levies, in behalf of different creditors, made by virtue of executions against the plaintiff, upon and covering the *locus in quo,* as the property of the plaintiff; the debts in which executions, accrued before the 11th day of May, 1840, the levies being afterwards, and the attachments having been made, in two of the suits before that day, and in the other two, some short time afterwards; and the attachments and levies in each case having been made before December, 1841. The defendant deduces title under these levies to himself, anterior to November, 1842, by deeds duly recorded.

The plaintiff first contends, that the defendant, upon the foregoing state of facts, had no right of entry into the *locus in quo* ; or if he had, that he entered in an unlawful manner. But it is perfectly clear, if the defendant had a right of entry, that he entered peaceably. The plaintiff and his family had left the house ; and the doors were open ; and in removing the furniture from it as little damage was done as consisted with the right to acquire the entire use and control of the house. The question, then, is, had the defendant a right of entry into it ?

The plaintiff contends that the levies were void ; that they should have set off the estate, in the language of the statute, " by metes and bounds." This, he contends, means by measure and by monuments. And alleges that the westerly line, particularly, of the parcel set off to the Central Bank, is not described ; the language in reference to which is, " thence westerly, on said Hamlin's north line, and on the north line of land occupied by Thomas Greenlow, to a stake at a point from which, running north thirty-two and a half degrees east, will strike the road eight rods and nine links west of the northwest corner of the Methodist meetinghouse lot." This, it is insisted, is not a running by metes and bounds. But we do not feel the force of the objection. It is to be presumed that the road is a monument well known, and easily ascertained ; and the northwest corner of the Methodist meetinghouse lot is ascertainable. These being known, the point by the road, eight rods and nine links from the northwest corner of the meetinghouse lot, must of course be ascertainable ; and the point of compass from thence being given to the land occupied by Greenlow, will give the westerly side line of the lot set off, with as much precision as is ordinarily practicable. The object of the legislature doubtless was, that the description of land set off should be such as would identify it. Certainty to a common intent, as to such particulars, was all that could have been intended. That which can be rendered certain is in law considered as certain. The lots in our townships are often known and designated by numbers. If set off on exe-

cution by such numbers it would be a setting off by metes and bounds; for it would be presumable that the metes and bounds were well known, or easily ascertainable. It would be no more certain, if it were said, that it was bounded by lots numbered, &c. on the different sides. These views are much strengthened by the language of Mr. Justice Weston, in delivering the opinion of the Court in *Buck* v. *Hardy*, 6 Greenl. 162. He says, "By metes, in strictness, may be understood the exact length of each line, and the exact quantity of land in square feet, rods or acres. It would be going too far to require, that this should be set forth in every levy. The legislature intended the land should be described with such certainty that there could be no mistake as to its location." Moreover, the words "metes and bounds" may have found their way into the statute of 1821, c. 60, § 27, by way of distinguishing land to be set off in severalty, from that to be set off in land held by the debtor in common with other persons. Both descriptions of land are to be found in the same section as liable to be taken in execution. This supposition may be regarded as well supported by the language of the Rev. Stat. c. 94, § 7; especially as the object of those statutes, in a great measure, was to simplify and render more plain the provisions in the law as it stood before. That section provides, that "the nature of the estate appraised, whether in severalty or undivided, a fee simple or less estate, in possession, reversion or remainder, shall be described, either be metes and bounds, or such other mode, that the same may be distinctly known and identified." Under this provision it would be quite evident, that any mode of describing the estate set off, that would be sufficient to identify it in a deed of conveyance, would come within its purview; and it may well be doubted if the same might not be said with reference to the former provision. It is difficult to perceive how it could have been ever intended, that any thing more than certainty to a common intent should be requisite in such cases.

A question is made, also, as to the setting off of two other portions of the *locus in quo*. The boundaries on three sides

of these are given; and then each is said to be bounded on the other; the one containing precisely seven acres, and the other precisely eight and an half acres; both together comprising all the land the debtor owned between the two other parcels set off; the one being butted on the one, and the other on the other, of those two parcels. The three side lines, and precise quantities of each being given, it could not be very material to the plaintiff, who was the debtor, where the creditors make their divisional lines. But they would be holden to such a divisional line as would give to each his proportion of the whole; and so that it should run as nearly parallel with the two opposite side lines as the form of the land would admit of. In this way certainty might be arrived at; and a boundary between them be ascertained; and so a setting off by metes and bounds would be established. If the boundary of the land of any other person were referred to, there might be some difficulty in ascertaining where it was; still it would be a setting off by metes and bounds within a reasonable construction of the statute. Inconvenience in ascertaining the boundary, so that it be susceptible of ascertainment can form no objection to it. This objection of the plaintiff's cannot be sustained.

It is next objected to one of the levies, that one of the appraisers was attorney to the creditor therein. How this appeared, the case, as made up and furnished to the Court, does not show. The officer has certified that they were indifferent and discreet men; and having so certified, it must be believed to be true. The remedy, if any there be, for such an erroneous certificate, if damage accrues from it, must be sought against the officer who may be responsible for the correctness of it.

The levies being unexceptionable, we now come to the consideration of other grounds, upon which the plaintiff seems more confidently to rely, to defeat their operation. The first of these is, that he had no such estate in the *locus in quo* as could be levied upon; that he was but a mortgagee; or in the condition of one; and that the mortgage, under which he

held, had not been foreclosed; and, if so, according to numerous decisions, his estate could not be taken by a levy; that this right, as mortgagee, he had assigned to his lessor, Smith, who had obtained, as he insists, a release of the right of redemption; thereby making him the owner of the estate in fee. If the facts thus set up by the plaintiff can be considered as established, we might find it difficult to avoid coming to the conclusion assumed by him as to their effect.

But it appears that the plaintiff had been in the undisturbed occupation of the close described in his writ, for more than seventeen years; that he had erected a large house thereon; and had disposed of portions of the mortgaged premises, by deeds of general warranty, and in fee; and finally had made the deed, conveying the residue, as before stated, in fee. By these acts he held himself out to the public, and certainly to his grantee, Smith, as the absolute and unconditional owner of the estate. Of all this, Smith, whose wife was the daughter of the plaintiff, was of course well knowing when he took the assignment of the mortgage from the plaintiff; and he was, moreover, informed by Howard H. Getchell, when he took the release of the equity of redemption from him, that he had no claim to the mortgaged premises. These circumstances were surely sufficient to place Smith upon his guard as to the supposition, that the plaintiff stood in the condition of a mere mortgagee, without foreclosure; he himself, in 1840, when he took an absolute and unconditional deed from him, as before stated, having treated him as the absolute owner of the estate. He knew, besides, when he took the assignment, that the whole of the estate conveyed to him and Getchell, whose wife was another daughter of the plaintiff, in 1840, had been levied upon by the plaintiff's creditors as the absolute property of the plaintiff; for the levies were all then matters of record. The plaintiff was of course conusant of all these facts. What then must be believed to have been the object of the plaintiff in making, and of his lessor in accepting, the assignment of the mortgage? Can it be reasonable to doubt, that it was with a hope, that it might enable them to avoid the levies?

But, with regard to the plaintiff's absolute title to the premises levied upon, the evidence does not stop here. After he had been notified to produce a deed, made to him by Howard H. Getchell, in 1825, releasing the right of redemption to the mortgaged premises, evidence was given, which we think was clearly admissible, showing indubitably, that he had such a deed. We think, therefore, that there cannot be the slightest doubt, that the plaintiff, from that time was the absolute owner of the mortgaged estate in fee; for it appears that Otis N. Getchell, the other original mortgagor, had, in 1823, conveyed his right therein to Howard H. Getchell, so that Marietta Getchell had no pretence of right thereto, which made Howard H. Getchell's release to the plaintiff perfectly effectual.

We come now to another ground relied upon by the plaintiff in support of his action. The deed he made, in May, 1840, to his sons-in-law Smith and Getchell, having been prior to the attachments made in the suits of the Neguemkeag Bank and Ticonic Bank, in pursuance of which two of the levies were made, he insists, that those levies were void, as against Smith and Getchell; and so that his lease from Smith, confirmed by Getchell, will enable him to maintain his action. But it is insisted, on the part of the defendant, that the deed to Smith and Getchell was fraudulent and void as against those creditors. It appears that their debts accrued before that deed was made; that the plaintiff was then greatly embarrassed, and indeed insolvent; it was a conveyance of all his real estate, so far as appears, whereby his creditors might be defrauded; it was to two individuals, neither of whom, so far as appears, wanted the estate for his own occupation; and both were his sons-in-law; and he was permitted to continue his occupation afterwards as before. These circumstances are recognized as badges of fraud. Newland on Contracts, 372; *Jackson* v. *Mather*, 7 Cowen, 301; *Gunn* v. *Butler*, 18 Pick. 248. By the agreement of the parties we are authorized to draw such inferences from the facts proved and legally admissible as a jury might. From this evidence a jury, in the absence of any proof on the part of the plaintiff of the payment of the consideration ex-

pressed in the deed, would be legally authorized to infer that the conveyance, as against those creditors, was fraudulent. The plaintiff offered no such evidence ; or any evidence whatever, except the recital in the deed made by himself, of the actual payment of any consideration for the conveyance. The deed recites that eighteen hundred dollars had been paid as the consideration for making the conveyance.

In *Hildreth* v. *Sands,* 2 Johns. Ch. 35, the Chancellor says, " the defendant has put the deed upon the fact of a fair purchase, for an adequate price ; and to that test the inquiry must be confined. A deed brought forward as founded on a valuable consideration cannot be set up as a gift or voluntary conveyance. The party is bound by the consideration alleged. There is no doubt of this rule." And cites 2 Vesey, 625, and Sch. & Lef. 501. Evidence was introduced, however, by the defendant, tending to show that the deed was made by the plaintiff to secure a maintenance, from the grantees, of himself and wife during their lives. This evidence consisted, as the case shows, of an admission made by him to that effect. If this were the consideration for the deed, even if it were admissible for the plaintiff to prove it, it could not avail him. *Jackson* v. *Carter,* 9 Cowen, 73.

*Plaintiff nonsuit.*