## BOWE v. PALMER et al.

No. 2004.   Decided June 22, 1909 (102 Pac. 1007).

1. TROVER AND CONVERSION—ACTS CONSTITUTING CONVERSION.   Merely to interfere with another's property or his rights therein will not sustain an action of trover, unless such acts are done with the intention of depriving the owner permanently or temporarily of his property.   (Page 218.)

2. TORTS—BURDEN OF PROOF—INFERENCES FROM EVIDENCE.   Where a person is charged in a civil action as a wrongdoer, and the evidence tends to connect him with the wrongful acts charged, in the absence of any evidence explaining or denying the wrongful acts, every legitimate inference warranted by the evidence may be taken against him.   (Page 222.)

3. TROVER AND CONVERSION—ACTIONS—SUFFICIENCY OF EVIDENCE— QUESTION FOR JURY.   Evidence, in an action of trover against an agent, who leased a building to plaintiff, for the conversion of goods and chattels therein belonging to plaintiff, *held* sufficient to make the question whether defendant's acts constituted conversion one for the jury.   (Page 223.)

APPEAL from District Court, Second District; *Hon. W. W. Maughan,* Judge.

Action by Annie E. Bowe against Annie Palmer and O. J. Stilwell.   From a judgment dismissing the action as against Stilwell, plaintiff appeals.

REVERSED AND REMANDED.

*J. E. Bagley* for appellant.

*James N. Kimball* for respondent.

FRICK, J.

The parties to this action have treated the complaint as stating a cause of action in trover for the conversion of certain goods and chattels belonging to the appellant, and the cause was tried upon that theory in the district court, and upon the same theory submitted to this court.   We shall

therefore treat the action as one of trover. The defense was, in effect, a general denial. The undisputed facts, as developed at the trial, are, in substance as follows: Respondent Stilwell represented one Goldberg, who lived in New York City, and who was the owner of a certain rooming house known as the "Tanner Block," in Ogden, Utah. On or about April 1, 1901, the appellant desired to lease the rooming house in question, and for that purpose applied to Stilwell for a lease. Mr. Stilwell, on said date, executed and delivered to appellant the following writing:

"$35.00 April 1, 1901. Mrs. Wm. Bowe has refusal of Tanner Block for three days from April 1st at $35 per month, and otherwise on same terms as last tenant. One week time allowed. O. J. Stilwell."

Pursuant to this writing, appellant was permitted to go into and take possession of the second story of the building in question for use as a rooming house. After cleaning the same, she, on or about April 4, 1901, informed Stilwell of what she had done and requested a two-year lease for the second story of the building aforesaid. Mr. Stilwell, at the time, executed and delivered to her the following:

"$35.00 Received of Mrs. J. Bowe thirty-five dollars for one month's rent for second floor of Tanner Block, subject to approval of L. B. Golberg, owner of Tanner property, time for rent to commence to be agreed upon later. O. J. Stilwell."

It was conceded at the trial that "Mrs. Wm. Bowe" and "Mrs. J. Bowe" referred to appellant. After paying rent as aforesaid appellant, with the consent of Stilwell, moved her household goods into the second story of the building, took possession thereof, and started the business of keeping a rooming house. Mr. Stilwell informed appellant that he would have to forward the lease to Goldberg at New York City for signature, and that Stilwell would deliver it to appellant when it was returned by Goldberg. It is not made very clear, but there is some evidence to the effect that the rent was to commence on or about April 15th. The respond-

ent Annie Palmer assisted appellant in cleaning the rooms
and in moving the goods into them; and she was employed by
appellant as chambermaid at a stipulated sum per month. A
few days after appellant had taken possession of the room-
ing house, and had started the business aforesaid, and before
the lease had been returned to Stilwell, she was called away
to attend her husband, who was sick at Promontory, Utah,
and who required her care and attention. Appellant accord-
ingly left Mrs. Palmer in charge of the rooming house and
appellant's business and property, and went to Promon-
tory to attend to her husband's wants. A short time after
appellant left, the lease was returned duly signed by Gold-
berg, by which appellant was given a two-year lease on the
second story of the building aforesaid. Mr. Stilwell took
the lease to the Tanner building for the purpose of deliver-
ing it to appellant, but, upon arriving there, was informed
by Mrs. Palmer that appellant had left, and had sold out
to Mrs. Palmer, and that she would take the lease and con-
duct the rooming house; that Mr. Stilwell was so informed
by Mrs. Palmer rests, however, entirely upon his subse-
quent declarations made to appellant, and is thus not estab-
lished as a fact by any competent evidence. For the pur-
poses of this opinion, we shall, however, treat it as an es-
tablished fact in his favor. The evidence is not clear as to
how long appellant remained away. It is to the effect, how-
ever, that she was not gone to exceed fifteen days, after which
she returned to Ogden to take charge of her rooming house
business. When appellant arrived at the house, however,
she was denied admission by Mrs. Palmer, and was informed
that the business belonged to her (Mrs. Palmer) and not
to appellant. Mrs. Palmer informed appellant further that
Mr. Stilwell had erased appellant's name as tenant from
the lease, and had substituted Mrs. Palmer's name as tenant,
and had delivered the lease to her; that she (Mrs. Palmer)
was the tenant, and that appellant had no right to the room-
ing house nor to the household goods, but that all belonged
to Mrs. Palmer, and she refused appellant access to the

rooms. She also refused permission to take the household goods therefrom. Appellant immediately went to see Mr. Stilwell about Mrs. Palmer's acts, and claims that he told appellant that he had been told by Mrs. Palmer that she was the owner of the goods in the rooming house; that she had purchased them from appellant, and that accordingly he had erased appellant's name from the lease and had inserted Mrs. Palmer's name, and had delivered the lease to her, and that she, and not appellant, was the tenant. Appellant at once informed Stilwell that the goods belonged to her, and not to Mrs. Palmer, and called his attention to the receipt he had given for the first installment of rent, and that her tenancy had not expired in any event. Mr. Stilwell informed appellant, however, that Mrs. Palmer was the tenant, and that he could do nothing for appellant. Appellant then, and at subsequent times, appealed to Stilwell to at least assist her in obtaining possession of her goods, but he said that he could do nothing for her, in view that the premises were leased to Mrs. Palmer. There is nothing in the evidence to indicate that Stilwell instituted any inquiry concerning appellant's absence from the rooming house when he went there to deliver the lease. He seems to have trusted to Mrs. Palmer's statement alone. There is, however, evidence to the effect that Stilwell knew that appellant had moved her own goods into the rooming house, and had taken possession of the second story of the building as tenant of Goldberg, whom Stilwell represented. There is no evidence that Stilwell took manual possession of any of the household goods, nor that he converted them, or any part thereof, to his own use; nor that he received any direct benefit from the acts of Mrs. Palmer in retaining possession of appellant's goods. To what extent Stilwell was connected with the acts of Mrs. Palmer is left to mere inference. It does appear, however, that, after Mr. Stilwell had been frequently appealed to by appellant to assist her in at least obtaining possession of her goods, and after he had ignored her rights as tenant, he, on

June 26, 1901, in the name of Goldberg, by Stilwell as agent, served a notice upon appellant by which he pretended to terminate appellant's tenancy on July 15, 1901, which tenancy, it is stated in the notice, was a monthly tenancy, and that it "commenced on the 15th day of June, 1901, and ended on the 15th day of July, 1901." It also appears that, after repeated demands had been made upon Stilwell by both appellant and her attorney, and after Stilwell's refusal to take any action in the matter, this action was commenced against both him and Mrs. Palmer for conversion. It also appears that the action has been pending for several years, and that a judgment by default against both Mrs. Palmer and Mr. Stilwell had been obtained, and that the judgment against Stilwell, upon his motion was set aside by the court.

Upon substantially the foregoing facts the court granted Stilwell's motion for a nonsuit, and entered judgment dismissing the action as against him, upon the ground that there was no evidence that would sustain a finding that Stilwell was guilty of conversion. The appeal is from this judgment. Counsel for appellant contend that the facts should have been submitted to the jury upon proper instructions as to the law, while counsel for Stilwell contend that the evidence discloses, as a matter of law, that Stilwell is not guilty of conversion. While it may be said that the courts generally agree upon a definition of what constitutes conversion in law, yet they do not always agree with respect to what particular acts come within such definition. The Supreme Court of New Hampshire, in *Baker v. Beers,* 64 N. H. 105, 6 Atl. 35, defines conversion as follows:

"Any distinct act of dominion wrongfully exerted over another's property in denial of his right, or inconsistent with it, is a conversion. It is not necessary that there should be a manual taking of the property, if the wrongdoer exercises a dominion over it in exclusion or defiance of the owner's right. Whether it be for his own or another's use, it is in law conversion."

Merely to interfere with another's property, or his rights therein or thereto, will not sustain an ac-

tion of trover, unless such acts are "done with the intention of depriving the owner permanently or temporarily of his property." (*Evans v. Mason,* 64 N. H. 98, 5 Atl. 766; *Mead v. Jack,* 12 Daly [N. Y.] 65.) *In Freeman v. Scurlock,* 27 Ala. 413, the Supreme Court of Alabama, in speaking of what constitutes conversion, states the law in the following words:

"The term has a more enlarged legal import, and embraces any intermeddling with, or dominion over, such property, subversive of the dominion of the true owner, or of the nature of the bailment, if it be bailed. If one person assist another in taking and removing the goods of another, and placing them without the owner's control, or beyond his power to obtain them, with intent to appropriate them to his own or another's use, and *does it under such circumstances as afford reasonable notice that such removal is unlawful and in derogation of the rights and subversive of the dominion of the true owner, they are both equally guilty.*" (Italics ours.)

In that case it is accordingly held that, where one person merely assists another in depriving the owner of his right and dominion over his property, the question of whether the one so assisting is also guilty of the conversion is a question of fact for the jury. The Supreme Court of Maine, which, in this respect perhaps, holds to a somewhat stricter rule than some of the courts do, in *McPheters v. Page,* 83 Me. 234, 22 Atl. 101, 23 Am. St. Rep. 772, states the rule in the following language:

"It is established elementary law, by well-settled principles and a long line of decisions, that any distinct act of dominion, wrongfully exerted over property, in denial of the owner's right, or inconsistent with it, amounts to a conversion. It is not necessary to a conversion that it be shown that the wrongdoer has applied it to his own use. If he has exercised a dominion over it, in exclusion or in defiance of, or inconsistent with, the owner's right, that, in law, is a conversion, whether it be for his own or another's use."

In Cooley on Torts (2 Ed.), p. 525, the author, after stating the law in similar language to the foregoing quotation, in speaking of the act, or acts, amounting to a conversion says: "The act must, indeed, be intentional, and not

merely accidental or negligent; but it is not necessary that the result which actually follows should have been contemplated." See, also, the following well-considered cases where the foregoing statements of the law are discussed and applied to various conditions: *Mead v. Jack, supra; Bolling v. Kirby,* 90 Ala. 215, 7 South. 914, 24 Am. St. Rep. 789; *Davis & Son v. Hurt,* 114 Ala. 151, 21 South. 468; *Brown v. Ela,* 67 N. H. 110, 30 Ala. 412; *Weber v. Davis,* 44 Me. 147, 69 Am. Dec. 87; *Scott v. Perkins,* 28 Me. 22, 48 Am. Dec. 470; *Clark v. Whitaker,* 19 Conn. 319, 48 Am. Dec. 160. See, also, the exhaustive note to the case of *McPheters v. Page, supra,* in 23 Am. St. Rep., beginning on page 773. The case of *Clark v. Whitaker,* in some of its features, resembles the case at bar.

If we now apply the foregoing statement of the law to the conceded facts in this case, and the legitimate inferences that may be deduced from such facts and the surrounding circumstances may a court, in the absence of any explanation of Mr. Stilwell's acts and conduct, declare, as a matter of law, that he was not a partaker of Mrs. Palmer's apparent flagrant acts of conversion, and thus declare him not guilty? As appears from the undisputed facts, Mr. Stilwell, as the agent of Goldberg, leased the rooming house to appellant; that he accepted rent from her, and gave her exclusive possession of the second story of the building, knowing that she had placed her goods in the rooms. He thus knew that she was a tenant in possession when the lease was returned by Goldberg, who approved Stilwell's acts in leasing the premises to appellant for a term of two years. Stilwell also knew that when he went to the house to deliver the lease, and when informed by Mrs. Palmer that appellant had sold out and gone away, at least a portion of the time for which he had received rent from appellant had still to run, so that, even if appellant should refuse to comply with her part of the contract as evidenced by the written lease, she nevertheless was rightfully in possession with her goods as a tenant, from month to month at least. Before

this he had informed appellant that he must obtain the signature of the owner of the house, but, so far as the evidence discloses, he assumed full authority to substitute one tenant for another without further consultation with the owner. Stilwell thus assumed all control over the building, when he knew one tenant was in possession with her goods, and turned it over to another tenant before the tenancy of the first had terminated. True, Mr. Stilwell claimed that he was told by Mrs. Palmer that she had purchased appellant's goods, and that Mrs. Palmer was conducting the business. These statements, however, in no way affected appellant's rights to either her goods or the rooms, nor her relation as a tenant. Mr. Stilwell cannot shield himself behind the statements of Mrs. Palmer as against appellant's rights. He acted at his peril in turning over the property to Mrs. Palmer; that is, in changing her relation from a mere occupant as a servant of appellant to that of tenant with the incidents flowing therefrom. It may be conceded that this, of itself, may have been no more than a breach of contract on Mr. Stilwell's part for which appellant could have obtained redress in a proper action, and that a mere breach of contract, although it may affect rights to specific personal property, does not ordinarily amount to the conversion of the property affected or lost to the real owner. Assuming that in this case Stilwell had been the actual owner of the property leased, and after installing appellant as his tenant with the rent paid by appellant, and before her term had expired, and while she was in possession as tenant, he had turned it over to another tenant, and had thus placed the second tenant in possession of appellant's property which was in the leased premises, why could she not have treated it as an act of conversion of her property? That she could have done this seems to be both good law and good sense. (*Smith v. Boyle,* 66 Neb. 823, 92 N. W. 1018; *Vilas v. Mason,* 25 Wis. 310.)

No doubt Stilwell did not precisely do what is assumed in the foregoing statement. But he interfered with ap-

pellant's property and property rights in doing what he did. True, there was no manual taking by him of any specific property belonging to appellant, but, in view of the undisputed facts, Mrs. Palmer did actually take and use appellant's property. Both Mr. Stilwell and Mrs. Palmer are charged in the complaint with having converted the property as joint wrongdoers. If we entirely segregate Mr. Stilwell's acts, so far as they are made to appear, from Mrs. Palmer's acts, and if no force or effect is given to his conduct or the inferences to be deduced therefrom, then it is perhaps proper to say, as a matter of law, Mr. Stilwell's individual acts did not amount to a conversion. But the trial court, in passing on the motion for a nonsuit, had no right to pass upon the weight or effect of the evidence that the jury were authorized to give it, concerning Mr. Stilwell's acts and conduct, in view of all the surrounding circumstances. The most the court could determine was whether there was any evidence from which the jury might legitimately infer that Mr. Stilwell and Mrs. Palmer connived and colluded in committing the alleged acts of conversion of appellant's property. Where there is in fact a conversion, as in this case, and another is charged as having been connected with the acts constituting the conversion through connivance or collusion, it is not always possible, indeed rarely so, that the connivance or collusion can be established by direct evidence. Collusion, if it exists at all, must ordinarily be inferred or deduced from all the facts and circumstances. In a civil action where a person is charged as a wrongdoer, and the evidence adduced at the trial tends to connect him with the wrongful acts charged, then, in the absence of any evidence explaining or denying the wrongful acts, every legitimate inference warranted by the evidence may be taken against him.

While the facts and circumstances, as disclosed by this record, perhaps present what may be termed a "border-line case," yet we are of the opinion that, under all the circum-

stances, it was a question of fact for the jury to say whether, in view of all that Mr. Stilwell did or omitted to do, he was in collustion with Mrs. Palmer in bringing **3** about the alleged conversion of appellant's property. The fact that Stilwell so readily changed tenants, and afterwards, when he was informed of all the facts (if he did not previously know them) refused to do anything to correct his error, if it was such, and in his attempt to terminate appellant's tenancy, which he had before refused to recognize, when considered in connection with all the other facts, we think should be passed on as questions of fact, and not of law. We are of the opinion, therefore, that appellant has a right to have the jury pass upon all the facts under proper instructions from the court.

The judgment, therefore, is reversed, and the cause remanded, with directions to the district court to grant a new trial, and to proceed with the case in accordance with the views herein expressed; appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.