## BOWE v. STILWELL et al.

No. 2161. Decided September 7, 1911 (117 Pac. 876).

1. TROVER AND CONVERSION—ACTIONS—INSTRUCTIONS. In an action against a real estate agent for the conversion of plaintiff's household goods, which were placed in a building by the authority of the agent, the case was not tried on the theory that a receipt given by the agent to the plaintiff for payment of rent operated as a lease, but the evidence tended to show that defendant entered with the agent's permission. *Held*, that the refusal of the court to instruct that the receipt did not constitute a lease was not error. (Page 379.)

2. APPEAL AND ERROR—ERROR WAIVED IN APPELLATE COURT. Appellant's exception to the refusal of a requested instruction will be deemed waived in the appellate court, where his brief does not mention that assignment of error. (Page 381.)

STRAUP, J., DISSENTING.

APPEAL from District Court, Second District; *Hon. John F. Chidester,* Judge

Action by Annie E. Bowe against O. J. Stilwell, impleaded with another.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*J. N. Kimball* for appellant.

*J. E. Bagley* and *George J. Marsh* for respondent.

FRICK, C. J.

This is the second appeal of this case. The former appeal was from a judgment of nonsuit, which was reversed. (*Bowe v. Palmer,* 36 Utah, 214, 102 Pac. 1007, 24 L. R. A. [N. S.], 226.) The evidence adduced on behalf of the plaintiff in this action, the respondent here, with the exception of making clear some of the matters referred to in our former opinion, is substantially the same as it was on the former hearing. In view of this, we refer the reader to our former

opinion for a statement of the facts, where they are stated in detail. The evidence adduced on behalf of appellant in its effect was limited to disputing or denying the statements made by respondent and her witnesses. In view of this a conflict arose, which, in view of what was said in our former opinion, was proper to submit to a jury. The court, in submitting the case to the jury, followed the law as laid down by us in the former opinion. The trial resulted in a verdict and judgment in favor of respondent, and the appellant prosecutes this appeal.

It is contended that the court erred in refusing appellant's request, in which the jury were directed to return a verdict in his favor. If our conclusions on the former appeal are sound, and we think they are, then the court committed no error in submitting the case to the jury upon the whole evidence. If there is any difference in the evidence adduced on behalf of respondent, it was stronger in its details on the last than it was on the former trial, and the mere fact that appellant denied or disputed a large portion or nearly all of respondent's evidence would not authorize the court to take the case from the jury.

Another assignment relates to the giving of and refusing to give certain instructions to the jury. The first exception relates to the giving of two instructions, in which the court instructed the jury that in determining appellant's liability they should consider all the facts and circumstances as they were made to appear from the evidence. In connection with this statement, the court told the jury just what would constitute a conversion of personal property, and under what circumstances they might find a person guilty of conversion, in accordance with the law laid down in the former opinion. Counsel for appellant in effect concedes that, if there was no error in submitting the case to the jury, then no serious error was committed in giving the two instructions just referred to, since all the argument that he offers upon the latter point is that what he had said in his brief upon the alleged error in submitting the case to the jury should be considered upon the latter point. In this connection counsel says:

"It (the court) had no right to submit the appellant's acts with reference to the leasing of the building as in any way tending to show an aiding, by him, of Mrs. Palmer, in detaining the goods, or as tending to show any connivance by him with her." In other words, it is, in effect, contended that the jury should not be permitted to consider all the facts and circumstances, including all that was said and done by appellant, in determining his liability. If the court had told the jury what, if any, effect any particular act, conduct, or statement of appellant, or of any of the witnesses should receive at the hands of the jury in determining the appellant's liability, it no doubt would have been error. So would it have been error, under the circumstances, to withdraw from the jury any fact or circumstance in evidence which in any way tended to implicate or excuse appellant with respect to the acts which respondent contended amounted to a conversion of her property. We are unable to perceive how it was error to submit all the facts and circumstances to the jury, as was done, including those connected with the leasing of the premises in which respondent's property was when the alleged conversion took place.

The next assignment relates to the refusal of the court to give an entire request of appellant's just as it was offered. All that is said by counsel in his brief relative to this assignment is as follows: "The court, having refused the second instruction asked for by the appellant, should certainly have given the latter part of the fourth instruction asked by him. That instruction simply asked the court to construe the receipt given for the one month's rent. It is too plain for argument that it is always the duty of courts to construe written contracts." The "second instruction" referred to is the request to direct a verdict for appellant. The court gave a large portion of the instruction requested, but refused to give it as a whole. That part of the instruction which was refused related merely to the legal effect that should be given to the receipt given to respondent for the first month's rent, which appellant had received from her under the conditions stated in our former opinion. The

portion refused, after setting forth the receipt in full, proceeds as follows: "That this receipt did not authorize the plaintiff to enter into the occupancy of the second floor of the Tanner Block, in the city, or to retain possession thereof, and if you find that she (respondent) did enter into the occupancy of said building and moved into the same (the property described in the complaint), or any of it, such placing of the property in the building would not render the defendant O. J. Stilwell liable to her for the same in any manner whatsoever. Even if you should find from the evidence that the owner of the building subsequently rented or leased the same to the defendant Annie Palmer, and that said Annie Palmer thereafter wrongfully detained said property, or some of it, from the custody of the plaintiff." It is sufficient to say in this connection that the case was neither tried nor submitted to the jury upon the theory that the receipt in question gave respondent any special rights. Neither did respondent take possession of the building by virtue of the receipt. According to her testimony, which the jury had a right to believe, she obtained the keys to the building from appellant and went into possession of it before the receipt was given. The receipt, therefore, was evidence merely of the payment of the first month's rent for the building. Appellant admits the payment of the money; admits that he received and got it and remitted the same to the owner of the building as rent. Moreover, there was evidence to the effect that a lease had been received by appellant, in which the building was leased to respondent; that appellant, without her permission, erased her name from the lease and substituted Mrs. Palmer's name in the place of respondent's therein, and then delivered the lease to Mrs. Palmer. Respondent testified to having seen the original lease in which the change was made, and she also testified that appellant admitted to her that he had made the change of names. True, appellant denied this; but whether he or respondent told the truth in this regard was for the jury to say. In addition to all this counsel for appellant offered a request, which the court gave just as requested, in which the jury were told in plain terms just what facts they

would have to find in order to hold appellant liable for conversion. In the charge just referred to, as well as in others, the jury were told that they must find certain facts to exist, before they were authorized to find against appellant. In view of the affirmative statements contained in those instructions, it was not necessary, even if it be conceded that it was proper, to tell the jury what, if any, effect should be given to any particular portion of the evidence. We think it was proper for the jury to consider all the facts and circumstances together, just as the court told them to do.

Another assignment relates to the refusal of the court to give another request offered by appellant. In counsel's brief, however, not one word is said with respect to this assignment; and hence it must be deemed abandoned.

It is also urged that the court erred in admitting in evidence two exhibits offered by respondent as a part of her case. Both of those exhibits are set forth in the former opinion. In one of them respondent was given the refusal to rent the building in question for the space of three days at thirty-five dollars per month, and the other was a receipt for thirty-five dollars for one month's rent for the building in question, subject to the approval of the owner. We think that in view of the other evidence these exhibits were properly admitted as part of the transaction between respondent and appellant. The action was not based, nor did respondent's right to recover rest, upon either one or the other of those exhibits; but her rights were made dependent upon all the acts and conduct of appellant, as they were connected with and formed a part of the whole transaction constituting the conversion in question. The case is one in which the facts are somewhat complicated, to say the least; and the circumstances are such that different minds might well arrive at different conclusions with respect to what the ultimate result should be. Moreover, the circumstances of the case are such that, although it be tried any number of times, there still would be some ground, perhaps, for claiming that some errors, at least technical ones, had occurred during the trial.

The case has been pending in court for ten years. Judgment was first obtained against appellant by default, which was set aside, and he was permitted to defend. The case was then tried and judgment of nonsuit granted in his favor, which, on the former appeal, was set aside. The case was then tried on the merits, and the jury, under what we conceive to be a full and fair charge, found against appellant. No one disputes the fact that respondent's loss was much greater than the jury awarded her. After waiting for ten years, she at last obtained a judgment for much less than the value of the property she had lost. Upon the other hand, it may be that the jury erred in their judgment; but if that be error it is one that we cannot correct, in view that there is sufficient evidence to sustain their findings.

The judgment, in our opinion, should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, J. (concurring).

The facts in this case, as I read the record, show conclusively that plaintiff went into possession of the rooming house in question as the tenant of Goldberg, and that both Goldberg and Stilwell recognized her as such. When plaintiff applied to Stilwell for a lease, he gave her the refusal of the property for three days, evidenced by the following writing: "$35. April 1, 1901. Mrs. Wm. Bowe has refusal of Tanner Block for three days from April 1, 1901, at thirty-five dollars per month, and otherwise on same terms as last tenant. One week's time allowed. O. J. Stilwell." On or about April 4, 1901, plaintiff paid Stilwell the rent on the property for the first month, and received from him a receipt, of which the following is a copy: "$35.00. Received of Mrs. J. Bowe, thirty-five dollars for one month's rent for second floor of Tanner Block, subject to approval of L. B. Goldberg, owner of Tanner property, time for rent to commence to be agreed upon later. O. J. Stilwell."

Respecting the time from which the payment made should apply on the rent, Stilwell testified in part as follows: "My

impression is now that I thought it would take about a week to clean up the house, and after that was done the rent could commence. . . . Q. Then she (plaintiff) was to have how long to clean up the rooms? A. About a week is my memory of it. Q. Wasn't she to move in when the rooms were cleaned? A. If the rent was accepted, she was to move in. Q. Well, was that accepted? A. Yes. . . . Q. I presume that you forwarded the money to Mr. Goldberg? . . . A. Not until this lease was turned over; . . . along in May or June, I think. . . . Q. Then you sent the money to him did you? A. Yes; and the balance that Mrs. Palmer paid to make the rent up to the 1st of June."

As stated in our former opinion in this case, reported in 36 Utah, 214, 102 Pac. 1007, 24 L. R. A. (N. S.) 226, "after paying the rent as aforesaid, appellant (Mrs. Bowe), with the consent of Stilwell, moved her household goods in the second story of the building, took possession thereof and started the business of keeping a rooming house." On or about June 26, 1901, a notice in writing, of which the following is a copy, was served on plaintiff to quit the premises: "Take notice that you are hereby required to quit and deliver up to me the possession of the premises known as the 'Tanner Block,' in Ogden City, Utah, and situated on the corner of Twenty-Fourth Street and Lincoln Avenue, in said city, and being the entire second story of said block, at the expiration of the month of your monthly tenancy of said premises, commencing on the 15th day of June, 1901, and ending on the 15th day July, 1901. This is intended as the fifteen days' notice to quit prior to the end of your month, for the purpose of terminating your tenancy aforesaid. June 26, 1901. L. B. Goldberg, Landlord, by O. J. Stilwell, Agent, per G. H." Stilwell testified regarding his connection with the giving of this notice in part as follows: "Q. You remember signing it? A. I remember signing it. Q. And you gave it to Mr. Halverson? A. I gave it to Mr. Halverson; yes, sir." The record shows that Mr. Halverson was Mrs. Palmer's attorney in a former suit brought against her and

Stilwell by plaintiff herein, to recover possession of the personal property involved in this action. In the face of these facts, it is idle for Stilwell to contend that plaintiff was not a tenant, or that he did not recognize her as such.

The defendant requested the court to charge the jury that "in this action it is an undisputed fact that on or about the 10th or 12th day of April, 1901, the defendant Stilwell gave to plaintiff a receipt for the sum of thirty-five dollars, which money he then and there received, which receipt was introduced in evidence in this action by the plaintiff, in the words and figures following. (Setting forth the receipt.) I instruct you that this receipt did not authorize the plaintiff to enter into the occupancy of the second floor of the Tanner Block in this city, or to retain possession thereof." The refusal of the court to give this instruction was excepted to, and is now assigned as error. The contention that the court erred in refusing to give this request is entirely without merit. In the first place, it is not contended, nor was the case tried on the theory, that the receipt operated as a lease, or gave the plaintiff authority to take possession of the rooming house in question, and to move her furniture therein; and I do not think the jury could have so construed it. The receipt itself in plain terms, provides that the leasing of the house by Stilwell shall be "subject to the approval of L. B. Goldberg, owner of the Tanner property." And furthermore, after plaintiff, in pursuance of a tacit, if not express, understanding with Stilwell, as shown by his testimony herein referred to, took possession of the property, cleaned up the house, and moved her furniture and household goods therein, she was recognized as a tenant by both Stilwell and Goldberg. And the court, under the undisputed facts in this case, would have been justified in charging the jury that the relationship of landlord and tenant existed between plaintiff and Goldberg. Therefore the court was not required to instruct the jury as to the legal effect of the receipt, as the jury could not possibly have been misled by it, to the prejudice of defendant.

Appellant also complains of the refusal of the court to direct a verdict in his favor. In support of this assignment of

error, counsel for appellant contends with much earnestness that there was not sufficient evidence to warrant the court in submitting the case to the jury. In order to properly illustrate the soundness of the court's ruling on this point, it is necessary to make a further review of the facts as disclosed by the evidence. Plaintiff, as soon as she moved her furniture into the building, was called to Promontory, which is about fifty miles from Ogden, to attend her sick husband, and she left Mrs. Annie Palmer in charge of the rooming house during her absence. Plaintiff returned to Ogden about May 1, 1901, and, according to her testimony, which is not denied, she went to the Tanner Block to resume charge of the rooming house, and was met by one of the employees in the house, who showed her a paper purporting to be a lease of the property, executed by Goldberg; that she examined the document and found that it was a lease from Goldberg to her, and that her name, as lessee, had been erased, and that Mrs. Palmer's name had been substituted and inserted therein as lessee; that Mrs. Palmer refused to permit her to take and resume charge of the house and furniture, claiming that she (Mrs. Palmer) held a lease on the property and was entitled to the possession thereof. Plaintiff further testified that on being refused access to the house by Mrs. Palmer, she immediately called on Stilwell at his office in the Reed Hotel, and informed him of her interview with Mrs. Palmer; that Stilwell admitted that he had, at the request of Mrs. Palmer, erased plaintiff's name from the lease and in lieu thereof had inserted the name of Mrs. Palmer as lessee. Plaintiff is corroborated on this point by George Marsh, who was present and took part in the conversation as her attorney. Stilwell in his testimony admitted that a demand was made on him, either by plaintiff or Marsh, for the lease. On this point he testified as follows: "Q. Now you say that she (plaintiff) came over with George Marsh to the Reed Hotel, and they asked you for the lease on the second floor of the Tanner Block? A. I am not certain whether she came with George Marsh or not; I was asked for the lease on the Tanner Block by either one or

both. Q. How many times, if you remember, did Mrs. Bowe and Mr. Marsh visit you at the Reed Hotel with reference to the occupation of the Tanner Block? A. If Mrs. Bowe came with Mr. Marsh in May or June, she was there three times; otherwise, only twice. Mr. Marsh was there twice, once in May, with her, and again when the demand for the lease was made." It appears from the record that plaintiff, after she returned from Promontory, succeeded in getting possession of one of the rooms in this rooming house and held it for a considerable length of time, but was finally dispossessed.

That Stilwell acted in bad faith towards plaintiff in this matter, for the purpose of aiding Mrs. Palmer in withholding from plaintiff her property, I think is all but conclusively shown by the evidence. In fact, Stilwell's own testimony tends to show this. In explanation of his conduct in delivering the lease to Mrs. Palmer, he testified in part as follows: "Mrs. Palmer had been asking for the papers some time. I didn't want to do anything unfair, so I held it for a while, so I could see Mrs. Bowe. She (Mrs. Palmer) kept assuring me that it would be all right to deliver it to her, because they were partners. I held it for a few days for that reason. Q. You tried to see Mrs. Bowe, but could not find her? A. Yes; I made every effort to find her, to see her, to inform her not to move in, but did not see her." He further testified that when plaintiff, in company with Marsh, called to see him at the Reed Hotel and demanded the lease (which the record shows was about May 1, 1901) he "didn't know that there was any fuss between them (plaintiff and Mrs. Palmer) at all;" that he told them he "had nothing to do with the renting of it, and that Mr. Goldberg had made a contract with Mrs. Palmer."

Now it is evident from this testimony, when considered in connection with the testimony of plaintiff and Marsh, that the lease was sent to Stilwell and by him delivered to Mrs. Palmer, in April, while plaintiff was at Promontory. The record shows that the only time Stilwell tried to find plaintiff and was unable to do so was during the time she was at

Promontory on the occasion mentioned. If, as Stilwell claims, the property in question was leased by Goldberg to Mrs. Palmer, and that he (Stilwell) had nothing whatever to do with the transaction, except to deliver the lease to Mrs. Palmer and collect the rent, why it became necessary for him, in order to avoid doing "anything unfair," to hold the lease until he could see plaintiff is not made to appear. Stilwell testified that Mrs. Palmer informed him "that Mrs. Bowe was out of town, and that she (Palmer) should have the lease." Now, if he, in delivering the lease to Mrs. Palmer, was merely following the instructions of Goldberg, it is difficult to understand why it was necessary for him to get the "assurance" of Mrs. Palmer that she should have the lease, and that "it would be all right" for him to deliver it to her. I have examined the record in this case with considerable care, and am clearly of the opinion that the question of whether Stilwell aided and abetted Mrs. Palmer in the wrongful detention of the goods in question was one of fact for the jury to determine, and that the court did not err in refusing to give the peremptory instruction requested by the defendant.

The defendant requested the court to charge the jury that if they found from the evidence that plaintiff "went to Promontory, or elsewhere, and left Mrs. Palmer in charge of said rooming house and the property therein, then Mrs. Palmer was rightfully in possession, and this is true, even though you should find from the evidence that the defendant Stilwell, during the absence of Mrs. Bowe, made a lease to the second floor of said Tanner Block to Mrs. Palmer; and such lease, if you find one was made, would not be a taking of the personal property described in the complaint and in the building from the custody and control of plaintiff by defendant Stilwell, nor would it be an aid of the possession of said property by Mrs. Palmer, if you find that she was in possession thereof; and unless you find that defendant did some other act than lease said second floor to Mrs. Palmer, if you find that he did so lease it, for the taking possession of said property to Mrs. Palmer in active aid of her, then your

verdict must be for the defendant Stilwell." Defendant duly excepted to and assigned as error the refusal of the court to give this instruction, but he has not discussed or even mentioned this assignment in his brief.

I agree with the Chief Justice that this assignment should be deemed abandoned; but, as it is suggested that the court erred in refusing to give the instruction, and that because of such error a new trial should be granted, I shall briefly discuss the alleged error. It is not contended, nor was it suggested at the trial, that Mrs. Palmer was not rightfully in charge of the rooming house during the time plaintiff was at Promontory in April, 1901. The claim made by plaintiff and the theory upon which she presented her case to the court and jury is that she left Mrs. Palmer who was employed by her as chambermaid, in charge of the rooming house on that occasion; that during her absence Stilwell received the lease in question from Goldberg; that the lease was made to plaintiff as lessee; that Stilwell, instead of holding the lease and delivering it to plaintiff on her return from Promontory, erased her name from the instrument and inserted the name of Mrs. Palmer as lessee; that with the change thus made he delivered the instrument to Mrs. Palmer, to enable her to hold possession of the leased property in her own name, and to prevent plaintiff from resuming her possession of the real property and the furniture in question on her return from Promontory; that Stilwell, to further aid and abet Mrs. Palmer in the wrongful withholding from plaintiff of the property, ordered her from the premises, and later on gave her written notice to vacate. And there is abundant evidence, as I read the record, to support this theory of the case. The claim made by Stilwell in this court, and the theory upon which he presented his side of this case in the court below, is that he had nothing whatever to do with leasing the property to either the plaintiff or Mrs. Palmer, except receiving and sending to Goldberg their applications for a lease. Counsel for appellant in his printed brief says: "His (Stilwell's) only connection with the transaction was as agent to deliver the lease executed by the owner, Goldberg." And again:

"The bare delivery of the lease, which seemed to have been all the connection the appellant had with the transaction, would not constitute aiding and abetting Mrs. Palmer in the conversion of the personal property." Now the language of the requested instruction under consideration implies that there was some evidence tending to show that "Stillwell, during the absence of Mrs. Bowe, made a lease of the second floor of the said Tanner Block to Mrs. Palmer." There is not a scintilla of evidence in the record tending to show, nor from which it can be inferred, that Stilwell made a lease to Mrs. Palmer. As I have pointed out, neither party tried the case on that theory. The instruction, therefore, is not predicated upon any fact established in the case, nor is it in harmony with the theory advanced by either party, except that part of it which recites that Mrs. Palmer was rightfully in charge of the property during the time that plaintiff was at Promontory, which is conceded by both parties. The charge of the court, when read and considered as a whole, was as favorable to the defendant as the facts in the case warranted.

For the reasons herein stated, I concur in the affirmance of the judgment.

STRAUP, J. (dissenting).

I concur in the ruling that the case was one for the jury on proper instructions. I think, however, that the court erred in refusing to charge the jury as requested by appellant. On the former appeal, and on the evidence alone on behalf of the plaintiff, "and in the absence of any explanation of the defendant's acts" in the premises, we said the inference is permissible that the defendant aided Mrs. Palmer in her acts of conversion. It was not then, nor is it now, claimed that the defendant was guilty of the conversion, except as he aided Mrs. Palmer in her acts of withholding and converting the goods. We there said: "As appears from the undisputed facts, Mr. Stilwell, as the agent of Goldberg, leased the rooming house to appellant; that he accepted rent from her, and gave her exclusive possession of the second story of the building, knowing that she had placed her goods in the rooms.

He thus knew that she was a tenant in possession when the lease was returned to Goldberg, who approved Stilwell's acts in leasing the premises to appellant for a term of two years. Stilwell also knew that when he went to the house to deliver the lease, and when informed by Mrs. Palmer that appellant had sold out and gone away, at least a portion of the time for which he had received rent from appellant had still to run, so that, even if appellant should refuse to comply with her part of the contract as evidenced by the written lease, she nevertheless was rightfully in possession with her goods as a tenant, from month to month at least. Before this he had informed appellant that he must obtain the signature of the owner of the house, but, so far as the evidence disclosed, he assumed full authority to substitute one tenant for another without further consultation with the owner. Stilwell thus assumed all control over the building, when he knew one tenant was in possession with her goods, and turned it over to another tenant before the tenancy of the first had terminated."

On this trial it was in substance either testified to by the defendant, or otherwise made to appear, that Goldberg, the owner of the property, was, at the time of the transactions in question, in San Francisco. The defendant at Ogden was his agent in collecting rentals of the building. He had no authority to lease the premises without the approval of Goldberg. On the 1st day of April, the plaintiff saw the defendant in respect of a lease to the second floor of the building. The defendant gave her a writing, in which it was stated that she had a refusal of the premises for three days at thirty-five dollars per month. Nothing was paid for the option. On the 15th she again saw the defendant who then gave her a receipt, as follows: "$35.00. Received of Mrs. Bowe, thirty-five dollars for one month's rent for second floor of Tanner Block, subject to approval of L. B. Goldberg, owner of Tanner property, time for rent to commence to be agreed upon later." In the meantime the plaintiff, without the knowledge or consent of the defendant, as testified to by him, moved her goods into the building. He denied that he gave her the keys, or otherwise put her in possession. Mrs. Pal-

mer was her chambermaid. The plaintiff, shortly after taking possession, left Ogden and went to Promontory, where her husband was sick. She left Mrs. Palmer in charge of the rooming house and of the business. Plaintiff's application for a lease was submitted to Goldberg by the defendant. It seems Mrs. Palmer had also applied to Goldberg direct for a lease, whether with or without the defendant's knowledge is not made to appear. In plaintiff's absence at Promontory, the defendant received the following from Goldberg: "Enclosed please find two leases for Anna Palmer for two years from June 1st, 1901, to May 31st, 1903. Kindly deliver one to her when she signs the other, provided she pays the rent from April 15th to June 1st as she agreed to do. I have reliable information that Mrs. Bowe, of whom you mentioned as desirous of taking the place, is not financially responsible. As I am bound by the lease, I also wish the tenant to be responsible. I believe Mrs. Palmer will make a better tenant for us."

The defendant, in accordance with the instructions, delivered the lease to Mrs. Palmer, who then had charge of the leased premises, and who told him that she had bought out Mrs. Bowe. As testified to by the defendant, no lease was given by him to Mrs. Bowe, nor does Mrs. Bowe claim that any lease was ever delivered to her. He denied that the lease delivered by him from Goldberg was in Mrs. Bowe's name, or that he erased Mrs. Bowe's name in the lease and wrote Mrs. Palmer's name in its stead. He testified that the lease as delivered by him to Mrs. Palmer was as received by him from Goldberg, in Mrs. Palmer's name and for her use and benefit. When Mrs. Bowe returned from Promontory, Mrs. Palmer refused her possession of the premises or the goods, and claimed and asserted possession of the premises in herself. Defendant testified that he had nothing to do with the acts or conduct of Mrs. Palmer in retaining the furniture, or in withholding it from Mrs. Bowe, except that he recognized Mrs. Palmer, and not Mrs. Bowe, as the tenant. In accordance with his theory of the case, he therefore requested the court to charge the

jury as follows: "If you find from the evidence that Mrs. Bowe, the plaintiff, employed Annie Palmer there as chambermaid or otherwise to take charge of or assist in managing and operating the rooming house known as the second floor of the Tanner Block, and that the plaintiff, Mrs. Bowe, went to Pomontory or elsewhere and left Mrs. Palmer in charge of the said rooming house and of the property therein, then Mrs. Palmer was rightfully in possession, and this is true, even though you should find from the evidence that the defendant Stilwell, during the absence of Mrs. Bowe, made a lease of the second floor of the said Tanner Block to Mrs. Palmer; and such lease, if you find one was made, would not be a taking of the personal property described in the complaint and in the building from the custody and control of plaintiff by defendant Stilwell, nor would it be an aid of the possession of said property by Mrs. Palmer, if you find that she was in possession thereof; and unless you find that defendant did some other act than lease said second floor to Mrs. Palmer, if you find he did so lease it, for the taking possession of said property by Mrs. Palmer in active aid of her, then your verdict must be for the defendant Stilwell, no cause of action."

The court refused this request, and otherwise failed to charge on such theory. Upon the facts assumed in the request, the defendant, and not the plaintiff, undoubtedly was entitled to prevail. There is ample evidence, though conflicting, to support them. The refusal to charge was excepted to, and is assigned as error. That is conceded. But it is claimed that the exception and assignment are waived because not discussed. Here is what counsel for appellant in his brief says: "Appellant found respondent absent and Palmer in possession, who told him respondent had sold out to her. He therefore gave her the lease for the building from Goldberg. He did not, by this act, or by any word or act of his, authorize her to take or hold the furniture; nor was that, or any other act or word of his, in aid of her (Palmer) in taking and detaining the furniture from respondent. . . . He did no act, and he said no word, either pur-

porting to transfer it (the furniture) or indicating that either he or Palmer owned it, or had a right to its possession. The lease he gave Mrs. Palmer did not mention the furniture, and neither from it, nor any word or act of appellant, can it be implied that he asserted title or right of dominion over it. Neither did the lease nor any word or act of appellant indicate an intention on his part to deprive the respondent of its ownership, either permanently or temporarily. . . . By agreement with the respondent, she (Mrs. Palmer) had a right to that possession and the control of it. The only interference that is testified to against the appellant is that he leased the real estate to Mrs. Palmer, when he should have leased it to the respondent. . . . The appellant was under no obligation to lease to the respondent. The express contract was that the lease should take effect when approved by the owner of the property. (The owner did not approve of it.) As appears from the evidence, the defendant in no way aided Mrs. Palmer in either the taking or the retention of the personal property. He was simply a passive agent of Goldberg, the owner of the property, who, being in San Francisco at the time of the transaction, could not have had any knowledge of the relations existing between Mrs. Palmer and Mrs. Bowe."

I think the assignment is properly before us. While I do not agree with counsel for appellant that the facts referred to were so indisputably shown as to entitle him to a direction of a verdict, yet I do agree with him that there was ample and sufficient evidence in support of them to require a submission of the case on such theory. They constituted appellant's theory of the case, and I think the court erred in refusing to so submit it.

The contention on the part of the respondent was, not that the defendant himself took or converted the furniture, but that Mrs. Palmer did, and that the defendant connived with and aided her in such acts. It was on such theory alone that the case was submitted to the jury on plaintiff's behalf. The court, in charging the jury in relation to defendant's liability, merely told the jury in general terms that if Mrs.

Palmer "wrongfully took the property in question into her possession and ousted the plaintiff from her possession, and refused to return the same to the plaintiff," and if they further found that the defendant "aided the said Annie Palmer to wrongfully take and convert the said property to her own use," or "assisted" or "connived with her" in the taking or the detention thereof, the defendant was liable; otherwise not. The court left it to the jury to determine, wholly unaided by the court, as to what would constitute a "wrongful taking," a "conversion," an "aiding," or "connivance." The court did not inform the jury what facts or circumstances testified to constituted an aiding, or a connivance, or a conversion. They were at liberty to construe anything done or said by the defendant as constituting an aiding, or a connivance, or a conversion. Now the defendant requested the court to charge that, if he did no more than the giving of the receipt to plaintiff for one month's rent, "subject to approval of Goldberg," the owner, and delivering to Mrs. Palmer the lease under the direction and instruction of Goldberg, such acts would not constitute a taking or a conversion, of the property; nor would they, in themselves, be sufficient to show that the defendant connived with or aided or assisted Mrs. Palmer in her wrongful taking or withholding. Because of the court's refusal to so charge, the jury may have determined that the mere giving of the receipt and the delivery of the lease under the circumstances, even as testified to by the defendant himself, constituted a conversion, or an aiding, or a connivance. From our holding on the former hearing that the case was one for the jury, it does not follow that, on a retrial and a submission of the case on the theory only of the plaintiff, and not on the theory, also, of the defendant, he may not complain, or that the complaint is met by the assertion that the evidence is in conflict, or that the things testified to by the defendant were disputed by the plaintiff, or another, or that there is sufficient evidence to show him guilty of an aiding, or a connivance, or a conver-

sion. Such a ruling is just as prejudicial to the defendant as the ruling in the former trial was to the plaintiff.

I think there ought to be a new trial. and therefore dissent.