JAY E. WELCH and ELIZABETH WELCH,

Plaintiffs in Error,

v.

MARGARET E. RICE and EDYTHE FAIVRE,

Defendants in Error.

(No. 2307, June 12, 1945; 159 Pac. 2d 502)

512

For plaintiffs in error there was a brief and also oral argument by Ray E. Lee of Cheyenne, Wyoming.

For the defendants in error there was a brief and also oral argument by James A. Greenwood of Cheyenne, Wyoming.

514

## OPINION

PER CURIAM.

Proceedings in error bring this case here to review a judgment of the district court of Laramie County, rendered upon the verdict of a jury, in an action wherein Margaret Rice and Edythe Faivre were plaintiffs

and Jay E. Welch and Elizabeth Welch were defendants. The plaintiffs being successful in that court they are the defendants in error here and the defendants who have sought this review are now the plaintiffs in error. Hereinafter the parties will usually be designated as they appeared in the district court or by their respective names. The action was one for damages alleged to have been suffered by plaintiffs due to their asserted wrongful eviction by the defendants from certain premises claimed to have been leased by the former from the latter. The verdict and judgment aforesaid was given and entered for the sum of $2,000.00.

The material facts to be considered as presented by the record before us are in substance as follows:

The defendants are the owners of a three-room apartment consisting of a living room, bedroom, kitchen and bath, with a rear and front private entrance located in a building situated on the north 88 feet of Lot 4 in Block 366 in the City of Cheyenne. The plaintiffs, during the years 1940-1943, inclusive, were engaged as teachers in the school system of said city. On or about September 10, 1940, plaintiffs orally leased this apartment from the defendants for a rental of $50.00 per month. The leased premises were, to some extent, supplied with furniture owned by the defendants and are referred to in the record as a "furnished apartment". However, plaintiffs had their own linens, cooking utensils, electric lamps, coffee tables, and radios. The defendants also furnished light, heat, water, and gas for cooking in the apartment, these being all mentioned in the testimony as "the utilities" and will be so designated herein.

The plaintiffs found the apartment so satisfactory that it was orally agreed between them and defendants that during the summer months of June, July, and August, the plaintiffs might procure tenants for the apart-

ment who would pay the required rent of $50.00 a month directly to the defendants and thereafter by the first of September relinquish the rooms to plaintiffs for their use during the ensuing nine months school year. Plaintiffs agreed to pay any rent not paid by the tenants they thus procured. This arrangement continued between the parties until September, 1942.

On August 29, 1942, the plaintiffs returned to the apartment, the summer tenants thereof having shortly before moved out of it. Upon talking with Mrs. Welch they were informed by her that the rent for the apartment would thereafter be $65.00 a month. Plaintiffs strongly objected to paying this increased amount but it was finally orally agreed that if they were unable to find another apartment after October 1st, 1942, they would pay defendants the larger rental. About the 25th of September, 1942, plaintiffs placed two checks, each for $25.00, bearing that date, payable to "Mrs. Jay Welch", one checking being signed by Margaret Rice and the other by Edythe Faivre, plaintiffs herein, in defendants' mail box together with a note stating that plaintiffs were enclosing the September rent for $50.00 and that on October 1, plaintiffs would send Mrs. Welch a check for $65.00; that plaintiffs had "found no place to live" and that they were not giving up their lease. The following morning plaintiffs received a communication reading:

"                                   Sept. 25th
   Miss Rice & Miss Faivre please vacate the
   apt. by Sept. 30th.
                                   Mrs. Welch
   P. S. My son & family coming to Cheyenne
      to reside and need quarters.
                                   E. W.        "

These two checks were never endorsed or cashed by the defendants. The plaintiffs continued to retain the apartment as before during the period between the re-

ceipt of this notice and October 1, 1942, taking no steps whatsoever to remove their personal property from the rooms thus occupied.

Early in the afternoon of October 1, 1942, the defendants entered the apartment and finding the plaintiffs' property still there packed a portion of it in boxes and cartons. These, and all the remaining property of the plaintiffs, defendants removed from the rooms where they were located, carried them out the rear door of the apartment and placed them on the back porch or on chairs set there for the purpose. Some of the property was set out in the yard back of the apartment. After thus accomplishing the removal of plaintiffs' chattels from the rooms the defendants locked the front door of the apartment from the inside, leaving the key fastened in the lock, and placed a padlock on the back door. All this was done while the plaintiffs were absent and engaged in their duties as teachers in the city school system.

Late that afternoon the plaintiffs returned to the apartment and found matters in the condition above described. They took an implement from the automobile owned by one of the plaintiffs, broke the glass of the front door, reached in, unlocked it, and entered the rooms. They then proceeded to the back door and pried the padlock off of that and thereupon moved their property back into the apartment. On the afternoon of October 2, following their return from school, they discovered that defendants had disconnected the utilities—all except the cold water and that was cut off later. Thereupon the plaintiffs commenced removing their property from the apartment and finally left it the morning of Monday, October 5. In a day or so thereafter defendants' son and his family moved into the apartment where they were at the time this cause was tried in the district court.

October 17, 1942, the plaintiffs instituted this action. Their amended petition contains three stated causes of action, the first of which makes a joint claim on behalf of both plaintiffs for the alleged breach of the terms of an oral agreement, asserted to have been made between plaintiffs and defendants, leasing to plaintiffs the apartment above described from September 1, 1942, to August 31, 1943, the rental for the month of September to be $50.00 and thereafter the sum of $65.00 per month. The facts as set forth in the paragraphs above and preceding this one are alleged with considerable particularity. Damages on this cause of action are asked in the sum of $275.00. The second cause of action presents a separate claim against the defendants by the plaintiff, Margaret Rice. The allegations of the first cause of action are incorporated by reference and it is asserted that injury to her personal property resulted from the removal thereof by defendants from the apartment, as hereinbefore described, in the sum of $125.00, and $12.50 necessary expenses in moving her effects off the premises of the defendants. Damages are also asked in the sum of $1,000.00 for mental pain suffered and humiliation, as well as punitive damages in a like sum. The third cause of action is a separate one on behalf of the plaintiff, Edythe Faivre, and in it the same amounts are claimed as damages and for the same alleged injuries as are pleaded in the second cause of action for Margaret Rice.

The answer of the defendants in their first and second defenses to plaintiffs' pleading is a general denial of all the allegations contained therein, except that they admit their ownership of the building and apartment mentioned above, the previous oral leasing and payment of rent for the apartment by plaintiffs, and the oral renewal of the leasing agreement until and including August 31, 1942. It is also alleged that about

September 1, 1942, plaintiffs again sought a "renewal of said oral lease from September 1, 1942, until August 31, 1943, and that said defendants refused to grant such renewal"; that defendants allowed plaintiffs to occupy the apartment temporarily in order that plaintiffs might secure another place in which to live; that they gave plaintiffs written notice to vacate the premises and upon their failure to do so the defendants entered the apartment "quietly and peaceably" and removed the property of the plaintiffs therefrom "in a careful and cautious manner" and "did no damage thereto whatsoever"; that after doing this the defendants closed and locked the apartment for the purpose of lawfully asserting and regaining their possession thereof; that plaintiffs, without notice to defendants, unlawfully and by force removed the lock which defendants had placed on one of the outer doors of the apartment and also broke a large panel of glass in another door thereof and thereby gained entrance to said rooms by force and violence; that defendants admit that they cut off the utilities supplied to said apartment in order to induce plaintiffs to leave the premises pursuant to the notice theretofore given them, after which plaintiffs left the rooms and removed their property therefrom.

Answering plaintiffs' second and third causes of action defendants denied generally all the allegations of these causes of action excepting the admissions already mentioned. The defendants then set out a cross petition in their answer claiming the sum of $310.00 damages for injuries inflicted by plaintiffs upon the furnishings and furniture of the apartment and the sum of $2,000.00 damages claimed to be due for mental suffering and a like sum for punitive damages on account of plaintiffs' conduct prior to the institution of their action. Plaintiffs' reply was, for the most part,

a general denial of the affirmative allegations of defendants' four alleged defenses.

The plaintiffs' answer to defendants' cross petition, aside from denials of its averments, was a reiteration that plaintiffs entered into possession of the apartment under an oral lease from defendants covering the period September 1, 1942, to August 31, 1943, and that plaintiffs were refused the occupancy of the apartment to August 31, 1943; that plaintiffs admit they broke the glass in the front door of the apartment and had made arrangements to have the glass promptly replaced but that they were prevented from doing that by the defendants. The reply of defendants to this answer was mostly a general denial of affirmative averments therein. The foregoing supplies in the main a brief resume of the pleadings of the parties. The disposition of the case in the district court upon the issues thus made has already been indicated.

Defendants filed a motion for a new trial which was in due course overruled and an exception was saved to that ruling. It is here assigned as error that the district court erred in overruling said motion. Among the many grounds upon which a new trial of the action was sought, it will suffice to mention only two, viz., that "the verdict of the jury is not sustained by sufficient evidence" and that the verdict "is contrary to law". The petition in error also asserts that the judgment is "contrary to law".

A proper disposal of this cause, as we view it, must turn upon the construction and effect to be given to Sections 97-207, 97-208, W. R. S. 1931. The first section mentioned reads:

"In this state there shall not exist the relations of landlord and tenant, by implication or operation of law, except a tenancy by sufferance. Upon the expiration of a term created by lease, either verbal or writ-

ten, there shall be no implied renewal of the same, for any period of time whatever, either by the tenant holding over or by the landlord accepting compensation or rent for or during any period of such holding over. Such holding over by the tenant and acceptance of rent by the landlord shall constitute only a tenancy by sufferance, with the rights, duties, obligations and incidents of such tenancy."

The other section is as follows:

"No lease which shall have expired by its own limitation shall be again renewed except by express contract in writing, signed by the parties thereto, whether the original lease be written or verbal. Nor shall any other tenancy than that by sufferance exist after the termination of the original lease, unless created as aforesaid, by express contract in writing."

These statutes were enacted by the Territorial Legislature of Wyoming, and approved December 1, 1875, and appear as §§ 1 and 2 of Ch. 72, Comp. L. of Wyo., 1876. Since that time they have formed a part of the statutory law existing and in force under both territorial and state governments of Wyoming, having been carried forward practically in verbatim form in all subsequent compilations and revisions of our laws.

In order to understand the legal consequences flowing from the operation of these sections as here applicable it is necessary to ascertain some of the "rights, duties, obligations and incidents" of a "tenancy by sufferance". It would seem that a tenancy by sufferance under the statutes quoted above possesses some of the characteristics of a tenancy at will, generally speaking, so that authorities dealing with the tenancy last mentioned will be hereinafter cited to some extent.

Not so very long after Chapter 72, supra, was made operative the case of McNamara v. O'Brien, 2 Wyo. 477, arose. That was an action brought by Emily E. O'Brien against P. J. McNamara in May, 1878, to re-

cover the sum of $125.00 with interest, as one month's rent for a store-room, from March 5. 1878, to April 5, following. The defendant denied any liability. The plaintiff was successful and obtained a verdict and judgment for $129.37 and costs. It appeared that Mc-Namara had held and used the premises under a written lease from the plaintiff for the period March 5, 1876, to March 5, 1877. After that year's term was ended he continued to hold until and including March 5, 1878, under a verbal lease only. McNamara vacated the store-room on the day last mentioned. Holding that the judgment should be reversed, the provisions of Chapter 72, supra, were quoted, and concerning them the court said:

"Under these statutes which we have quoted in full, there could, at best, be only a tenancy by sufferance. Now a tenant by sufferance is one who holds by permission or indulgence, without any right. Such an one has a bare naked possession, and no estate that he can transmit; and so is liable to be evicted at the pleasure of his landlord; and *e converso* the tenant, of course, being in by mere permission, has the right to leave at any time he sees fit, and of course is liable not as a tenant by the year, or by the month, but only at best for the actual time that he may be in possession of the premises, in this case only the occupancy for one day, and liability for only one day's occupancy, and then not recoverable under an action on a lease, but to recover at all it should be for an actual holding over or occupancy by a tenant by sufferance, and this would not be for more than the *pro rata* of more than one day to thirty at the rate of one hundred and twenty-five dollars per month; and this, in our judgment, could not be recovered in the form and under the issue that was presented to the jury."

That decision was by the Wyoming Territorial Supreme Court, but it appears to have been approved in the subsequent opinion of Lawer v. Mitts, 33 Wyo. 249 238 Pac. 654, in this court, which was an action by a landlord against a tenant for an amount claimed as

damages because of the closing of said premises which had been rented by the former to the latter, due to a court order for the abatement of a nuisance as a consequence of the possession and sale of intoxicating liquor by the tenant in the premises leased.

In the course of the opinion in that case filed the court considered the character of the tenancy involved and before quoting the two sections set out above used this language:

"It appears from plaintiff's testimony, which is uncontradicted, that the defendant Mitts had occupied, as tenant, the east basement room in his said building for several years, paying as rental the sum of $65 a month, and that said sum was the reasonable rental value; that the defendant had occupied the room since about 1917, and under a lease until a short time before it was closed up, when the lease expired; that it expired some three or four months before the first of June, 1921; and that after its expiration, and prior to June 1, the defendant had paid him $65 a month, the same as under the lease. The defendant also testified to the fact that, since the expiration of the lease, without any further understanding between himself and the plaintiff, he had paid the plaintiff $65 on the first day of each month until the building was closed. Under our statute, therefore, the defendant's occupancy of the premises after the expiration of the lease constituted him a tenant by sufferance. McNamara v. O'Brien, 2 Wyo. 447."

In that opinion it was also said:

"So in the case decided in our own court, McNamara v. O'Brien, supra, it was said in the dissenting opinion of Mr. Justice Peck, who dissented only on the ground that the right to assert error had not been preserved by proper exception, that the contract, 'which appears in the proofs, is a tenancy by sufferance, arises by implication, and is no more than what would arise,' thereby affirming the proposition that under our statute, as well as at common law, a tenancy at sufferance is a relation implied from the facts, which seems to be a

correct interpretation of the provisions of our statute above quoted, declaring that the relation of landlord and tenant shall not exist by implication or operation of law, *except* a tenancy by sufferance. * * * We find nothing in our said statute to indicate an intention to permit holding over by the tenant after the expiration of his term without an obligation to pay the reasonable value of the use of the premises, and thus leave the landlord without remedy except that of forcible eviction. And we think the decision in McNamara v. O'Brien, supra, may be accepted as expressing the view of the court at that time that a liability for damages, to be measured by the reasonable value of the use and occupation, might be recovered."

It seems that a tenancy by sufferance can be terminated by re-entry or any affirmative action on the part of the landlord which indicates that he desires the tenant to surrender the premises occupied by the latter. A notice to quit is not necessary unless required by statute and we do not appear to have any statute dealing with the matter.

32 Am. Jur. 89, § 75, speaking of tenancies at will and sufferance, says that:

"A consent on the part of the landowner to the continued occupancy is not essential to create a tenancy at sufferance; in fact, if the occupancy is with the express or implied consent of the landowner the tenancy is one at will.

"A tenant at sufferance has merely a naked possession and stands in no privity with the landlord. The landlord can put an end to the tenancy whenever he wishes, and may, under certain circumstances, treat the one in possession as an intruder or a trespasser. A tenant at sufferance is not entitled to a notice to quit."

To the same effect is 35 C. J. 1137, §§ 377-378.

In our case of Day v. Smith, 46 Wyo. 515, 30 Pac. 2d 786, it was pointed out that even "to terminate a ten-

ancy at will, no notice is required, unless there is a contract or statute to the contrary", and 35 C. J. 1130, § 360, was quoted, reading in part:

"The estate of a tenant at will may likewise be determined by an entry upon the premises by the owner for that purpose. And any act of ownership exercised by the landlord which is inconsistent with the nature of an estate at will, such as exercising rights of ownership which would be wrongful in view of a continuance of the tenancy, or any act done on the land for which the landlord would otherwise be liable to an action of trespass by the tenant will terminate the tenancy."
It was then said:

"In the case at bar the landlord took possession of the premises, and peaceably, as heretofore said. That clearly indicated an intent on his part to determine the tenancy that existed in the case at bar, * * * ."

It will be of material aid here to ascertain what a landlord may do to determine a tenancy by sufferance so as thereby to indicate the landlord's intention to put an end to the tenancy, as well as what a landlord may do upon his re-entry of the premises held by a "tenant by sufferance".

35 C. J. 1137, § 378, states that:

"At common law a tenant at sufferance is not entitled to any notice to quit before his tenancy can be terminated, and the landlord may enter or bring ejectment for the recovery of possession without first giving notice to quit or making a demand for possession; * * * "

And the same section of this text also says:

"So if the landlord, in dispossessing a tenant at sufferance, does any unnecessary violence or injury to the goods of the tenant in their removal, he is liable in trespass therefor, although if he removes and stores the goods with due care, he is not liable for their loss, either in trespass or trespass on the case."

2 Taylor's Landlord and Tenant (9th Ed.) 49, § 466, discussing the termination of both tenancies at will and by sufferance, says that:

"An express determination of a general tenancy at will is also effected by a notice to quit; which is either a positive demand for possession by the lessor, or a formal declaration by the lessee that he will hold no longer, followed by his giving up possession. If the tenancy is strictly at will, a simple demand is alone requisite. A tenancy at sufferance is determined, at common law, by mere entry, no demand of possession or other notice being necessary for the purpose * * * ."

Concerning the necessity of a notice to quit to determine a tenancy at sufferance, 2 Tiffany Landlord and Tenant 1432, § 196 d. the author remarks that:

"A tenant at sufferance would seem, by the very nature of the case, not entitled to notice to quit, since otherwise the effect would be to enable a tenant for a fixed term, by wrongfully holding over, to acquire a right to a notice to which otherwise he is not entitled, and that such is the law has been frequently recognized."

36 C. J. 602, § 1763, also says that:

"Where the landlord has effected an entry, although in the absence of the tenant, he may remove the goods of the tenant from the premises, provided, in so doing, he exercises ordinary and reasonable care and refrains from unnecessary force or violence, or unnecessary damage or injury to the property."

1 Underhill on Landlord and Tenant 237, § 172, referring to a concrete set of facts, says:

"Thus, a landlord who, after notice to quit, enters the premises, while the tenant at sufferance was temporarily absent, by forcing the door open and places the tenant's chattels outside and re-fastens the door is not liable to the tenant at sufferance. And where the tenant at sufferance after being thus ejected re-entered and re-occupies the premises, he becomes thereby a trespasser from the day of his re-entry."

In Freeman v. Wilson, 16 R. I. 524, 17 Atl. 921, the facts, as officially reported, were:

"Plaintiff occupied a store as tenant. At the time specified in a notice to quit, served on plaintiff, he refused to surrender the premises, and his lessors brought ejectment against him. While this action was pending defendant, as agent of the lessors, entered on the premises during the plaintiff's absence, removed plaintiff's goods into the street, and forcibly prevented the plaintiff from re-entering; whereupon the plaintiff brought this action in trespass, and the defendant pleaded the above facts in justification. At the trial the plaintiff requested the presiding justice to charge the jury 'that the defendant, under the evidence, had no right to enter the premises occupied by the plaintiff without process of law, and that such entry was a trespass.' The presiding justice refused so to charge, and did charge 'that at the expiration of the notice to quit the plaintiff beame a trespasser, and that the defendant, as agent of the landlords, had a right to enter said premises, take possession, and eject the plaintiff's goods therefrom without legal process, and that the plaintiff had no right to re-enter.' To the refusal and charge the plaintiff excepted."

Overruling the exceptions on review the appellate court said:

"We find no error in the instruction of the court to the jury, or in the refusal of the court to charge in accordance with the plaintiff's request. The instruction is sustained by Souter v. Codman, 14 R. I. 119."

A law in substance somewhat similar to §§ 97-207 and 97-208, W. R. S. 1931, supra, appears to have been in force in the state of Florida. § 4, Ch. 5441, Laws of 1905 in that state read:

"That when any tenancy shall have been created by an instrument of writing and the term for which such tenancy is limited therein shall have expired and the tenant shall hold over in the possession of said premises without renewing the said lease by some further instrument of writing, then such holding over shall be

construed to be a tenancy at sufferance, and the mere payment or acceptance of rent shall not be construed to be a renewal of the said term; but if such holding over be continued with the consent of the lessor, then such tenancy shall become a tenancy at will under the provisions of this act."

This law was considered in the case of Brown v. Markham, 56 Fla. 202, 48 So. 39, where a tenant held a written lease for a year, that period had expired and the landlord had accepted rent for the month of February which was the month following the expiration of the lease term. It was contended that by accepting this rent the landlord had thereby extended the lease for another full year. There had been no re-newal of the lease in writing. The landlord brought an unlawful detainer proceeding to oust the tenant. The jury's verdict and the judgment in the trial court were for the defendant. Reversing this judgment the court said after quoting the section of the statute which we have set forth above:

"It is evident under this section that the acceptance of the rent is not to be construed as a renewal of the lease for another year from the 1st of February, 1908, as it is not pretended there was an instrument of writing extending it. Brown's testimony shows plainly he did not consent to such a renewal or holding over for another year. Under this section, therefore, Mr. Markham was a tenant by sufferance, and was liable to be ejected in this action, for he had no right to hold the store room after the date fixed in the notice terminating the lease,—namely, the first day of May, 1908. This action was brought on the 28th day of May, 1908."

In Clark v. Keliher, 107 Mass. 406, it appeared that the defendant, by an oral lease, rented a tenement house to the plaintiff who began to occupy the premises as a tenant at will under his lease, May 7. On June 7, following, the rent was paid. On that date the defendant left a notice to quit the leased property with plaintiff's wife, the plaintiff being out of town, said notice

demanding the surrender of the premises on the 7th day of July, next. The agreed facts in the case were further stated to be that:

"On the 12th of July, no further rent having been paid, the defendant, who had been watching for the opportunity, found the house temporarily vacant (the plaintiff's wife having gone up to the street, and the plaintiff's children being about in the yard and one of them on the upper door-step) took peaceable possession of the house, and proceeded to put the plantiff's furniture out of doors, and fastened the doors, and prevented the plaintiff's wife and children from reoccupying the house. The plaintiff's wife knew of the removal, at once. The plaintiff was away from home, being a travelling peddler. The goods and furniture remained out of doors over night, and the next day were wet by a rain, and damaged, before the plaintiff's wife (the plaintiff being out of town) was able to find a place to put them in. The damage to the goods by being thus put out of the house was ten dollars."

Plaintiffs sued to recover this damage. Declining to allow this recovery and holding the notice to quit sufficient the court said:

"As the estate of the tenant in the premises had been regularly terminated, and ample time and opportunity had been allowed him for the removal of his furniture, he has no ground of complaint as to the manner in which the defendant took possession."

To the same effect is the case of Overdeer v. Lewis, 1 W. & S. (Pa.) 90, 37 Am. Dec. 440, where also the tenancy was one at will.

In Weeks v. Sly, 61 N. H. 89, it was held that if a tenant refuses to leave at the expiration of the time fixed in a notice to quit the lessor may peaceably remove the tenant's goods, doing no unnecessary damage, and the court said:

"The plaintiff's occupancy was a tenancy at will no different contract being shown. G.L., c. 250, s. 5. The

rent was due and in arrear October 11, 1879, and no point is made that it was not demanded before service of the notice. Seven days' notice was therefore sufficient to terminate the tenancy, and after the time fixed in the notice of the plaintiff was a trespasser. His goods were *damage feasant,* and the defendant had a right to enter and remove them to a convenient distance, without breach of the peace, doing them no unnecessary damage. *Whitney* v. *Swett,* 22 N. H. 10, 13. A tenant who holds over after the determination of his tenancy, being a trespasser, or at most a mere tenant at sufferance, cannot maintain trespass *qu. cl.* against his landlord who enters and dispossesses him. After the determination of his tenancy, he has no legal right of possession on which to found his action."

The facts in the case of Smith v. Hawkes, 2 Oh. Dec. (Reprint) 733, are reported thus:

"The petition in this case charges that the defendant has been guilty of a trespass in entering the plaintiff's dwelling-house and removing her furniture.

"The defendant by his answer, admits that he did this, but avers that he was the owner of the house in which the plaintiff lived; that he had rented the house to her; and that, before the expiration of her lease, he had duly notified her to leave the premises at the termination thereof; and stated further than since her term expired he has, on several occasions notified her to leave; that she failed to do so, and that at the time mentioned in the petition, the plaintiff being absent from the house, he entered the same and removed her furniture carefully, doing no damage thereto, and took possession of the building. This is the substance of the answer, omitting dates, etc.

"To this answer the plaintiff has interposed a general demurrer."

Overruling the demurrer after reviewing authorities at some length the court said:

"I have not found any case in which the landlord's right has been questioned under circumstances such as attended this transaction. No personal violence was

done to the tenant. She was not personally present. She had no right to the possession, and the defendant only did for her what it was her duty to do, when he carefully removed her furniture from his building. Clearly, no right of hers was violated.

"Upon what theory, then, can this action be maintained? The effect of the claim, is, that the plaintiff should recover damages from the defendant, because he has quietly and peaceably placed himself in a position where he had a right to be, and where she had no right, but on the contrary was occupying wrongfully. In short, the plaintiff was in the defendant's shoes. She stepped out of them for a moment, and he, out of right, quietly stepped in, and she now asks damages against him for doing so.

"It is clear, I think, upon reason and authority, that she cannot recover."

Holding adversely also to another contention of the plaintiff the court said:

"The claim that, in case the tenant holds over and refuses to quit, the only remedy of the landlord, in this State, is by process under the 'Forcible Detainer' statute, cannot be maintained. In England, a summary process to oust tenants at sufferance, is given to the landlord; and in New York, a summary remedy is provided under the process of a single judge.—4 Kent 118. Yet, in none of the numerous authorities to which I have referred, has it ever been held that this abrogated the right of the landlord to reinstate himself in the possession, if he could do so peaceably."

The case of Adams v. Adams, 7 Phila. (Pa.) 160, is authority for the rule that a tenant by sufferance may be dispossessed at the pleasure of the landlord but that trespass will lie for any unnecessary violence or injury to the tenant's goods in the removal.

See also Rollins v. Mooers, 25 Me. 192; Lash v. Ames, 171 Mass. 487; Mabalacat Sugar Co. v. Ramriez, 53 Philippine Rep. 496; Smith v. Detroit Loan & Building Association, 115 Mich. 340, 73 N. W. 395.

On the authority of an extended list of cases reviewed in the appellate courts of the nation the author of the note in 45 A. L. R. 317, appended to the case of Gower v. Waters, 125 Me. 223, 132 Atl. 550, 45 A. L. R. 309, says that:

"It is generally held that where the tenant's right of possession has terminated, and the landlord enters peaceably, as in the tenant's absence, he may maintain his possession by the use of such force as is reasonably necessary."

The case last cited holds, as stated in the syllabus, 45 A.L.R., that:

"A tenant at sufferance cannot maintain trespass quare clausum against his landlord for a peaceful entry to dispossess him, even though excessive force is used." In the course of the opinion we find the language used:

"While there is a conflict, the great weight of authority appears to be that, unless affected by some local statute, a landlord as against a tenant at sufferance may enter to take possession, using no more force than is necessary to effect an entrance, and in expelling the tenant no more than would enable him to maintain a plea of molliter manus; and by reasoning that appears unassailable it is further held by courts of the highest standing that, regardless of the force used in entering, trespass quare clausum is not maintainable."

We are obliged to conclude from the terms of the two sections of the Wyoming statutes quoted above that the tenancy of the plaintiffs during the month of September, 1942, in the case at bar, was nothing more than a tenancy by sufferance. They had held the apartment involved previously merely through an oral lease which at most was a tenancy at will, that lease had expired and by our statute, (§97-207, supra), only a tenancy by sufferance remained. Though not entitled to have it either as tenants by sufferance or at will, a notice to quit the apartment by September 30, 1942, was given them by the defendants on September 25,

preceding. This notice allowed plaintiffs even a longer period than that required in order to commence a forcible entry and detainer action in this state. See §62-1703, W. R. S. 1931. At its expiration plaintiffs became trespassers and thereafter they had no right to retain the property in their possession. Defendants' notice to quit clearly evinced an intention on their part to allow plaintiffs no further possession of the apartment.

This being so the defendants were lawfully entitled under the authorities above reviewed to peaceably enter the apartment and remove plaintiffs' property therefrom. They were only doing what the plaintiffs should have done in accomplishing this removal. If, however, defendants did any unnecessary violence or damage to plaintiffs' property in removing it from the apartment the defendants would be liable to respond in damages for that. On the other hand, plaintiffs are liable for the unpaid rental of the premises during the time they occupied them and also for any damage done to the apartment by them in re-entering same after the notice to quit had expired. That re-entry on their part was without any legal right whatsoever. It is also true that if they damaged any furniture in the apartment over and above what would accrue from the ordinary use thereof, they are responsible for that also.

The verdict and judgment complained of being contrary to the law applicable to the case as well as contrary to the evidence presented by the record herein, the judgment must be reversed and a new trial ordered wherein proceedings shall be had not inconsistent with the views herein expressed.

Reversed with instructions to grant a new trial.