BEN VISSENBERG,

*Plaintiff and Appellant,*

vs.

NAN BRESNAHEN and WINNIFRED
BRESNAHEN,

*Defendants and Respondents.*

(No. 2426; February 8th, 1949; 202 Pac. (2d) 663)

For the Plaintiff and Appellant, the cause was submitted upon the brief and also oral argument of J. A. Greenwood of Cheyenne, Wyoming.

For the Defendants and Respondents, the cause was submitted upon the brief of Loomis and Lazear of Cheyenne, Wyoming, and oral argument by Mr. Edward T. Lazear.

## OPINION

BLUME, Justice.

The plaintiff, Ben Vissenberg, brought an action against the defendants, Nan Bresnahen and Winnifred

Bresnahen, for damages sustained by reason of conversion by the defendants of a stock of merchandise and accessories. Upon demand of the plaintiff, the case was tried to a jury. They returned a verdict in favor of the defendants, and the plaintiff has appealed to this court upon the grounds that the verdict and judgment are not sustained by sufficient evidence, are contrary to the evidence, and contrary to law. The parties will hereinafter be referred to as in the court below.

The plaintiff, in his petition, alleged that on September 30, 1947, and for seven and a half years previously, he occupied a store building known as 217 West 17th Street in the City of Cheyenne, Wyoming; that on or about October 1, 1947, he was the owner and in possession of a stock of merchandise, furniture, fixtures, account books, and papers; that on that date, the defendants wrongfully and unlawfully took possession thereof and of all the records of plaintiff kept in connection with and used in the operation of plaintiff's business, and converted said properties to their own use; that defendants completely dispossessed plaintiff of all of said property, and have concealed them from plaintiff, and have deprived plaintiff of his property since the taking thereof; that he had been engaged in business for 29 years and had a large number of customers and purchasers throughout the community and had built up good will for said business over a long period of time; that he made an annual profit of $5,000. He asked to recover from the defendants the value of his merchandise of the value of $15,000 and the sum of $3,500, the value of his fixtures, in addition to $10,000 punitive damages.

The defendants answered, admitting that plaintiff was in possession of the premises in question on the date mentioned, and that he had been engaged in the men's clothing business, but denied the other allega-

tions of the petition. In further defense, they alleged in substance the facts as developed by the evidence, including the fact that the plaintiff was notified to vacate the premises; that an action was brought against the plaintiff for forcible entry and detainer; that judgment was given for the defendants; that plaintiff took an appeal in bad faith, and that peaceable and rightful possession of the premises was taken by the defendants on or about October 1, 1947. The facts , as developed in the trial, are in substance as hereinafter stated. Since the jury found in favor of the defendants, we shall give, in the main, only the evidence most favorable to them. Winnifred Bresnahen and her sister, Nan, lived in an apartment above the store building. The premises belonged to the Bresnahen Estate, and Winifred Bresnahen was the manager thereof. Plaintiff had a lease thereon which expired in May 1945. He wanted another lease but defendants refused to give it. In May 1947, Winnifred Bresnahen talked with the plaintiff, wanting him to move. Plaintiff stated that he would have to take bankruptcy if the defendants put him out. On June 23, 1947, the attorneys for the defendants sent a letter to plaintiff, substantially to the effect that he could not continue in possession of the store and a lease to someone else had been signed and the first month's rent had been paid thereon. The witness Winnifred Bresnahen thereafter went to see the defendant every day, telling him to get out on the first day of July. Plaintiff gave her the impression at that time that he would move. But, when he found that a lease had been given to another tenant, he got angry. From then on, he kept saying that he wouldn't get out and that the witness couldn't put him out. On the morning of July 1st, witness went into the store to take possession that day. Plaintiff said he wouldn't get out. A man delivered some lumber for the repairs of the store, but plaintiff

would not let him in. Witness and the lumberman finally left so as not to get hurt. On July 2, 1947, the attorneys for the defendants had a written notice served upon the plaintiff by the sheriff of Laramie County to vacate and quit the premises within three days, stating, among other things, that, on July 1, 1947, the rent for the building would be $10 per day and $25 per day after August 1, 1947, but without, however, authorizing the plaintiff to continue to occupy the premises in question. On July 7, 1947, a suit in forcible entry and detainer was brought in Justice Court. Judgment was given on July 14, 1947 in favor of the defendants, and the rental fixed at $150 per month. It recited that $75 had been accepted by defendants as rental for half of the month. The plaintiff appealed the case to the district court of Laramie County and continued to pay the rental on the premises at the rate fixed by the Justice of the Peace until and including October 15, 1947. The witness Winnifred Bresnahen further testified in substance as follows: "After the judgment in the justice court, plaintiff said that he would appeal the case, drag it through the courts for years; that it would cost us plenty; that he wouldn't get out and I couldn't put him out. I saw the plaintiff thereafter every day to the time that we locked the store. In August 1947, he put up a sale sign 'Forced to Vacate' and ran that in the paper once. However, he only went through the motions of putting on the sale, and it was not in good faith. On the morning of September 30th, we locked the door. I put a lock on it from the outside. That was before the store was opened in the morning. I told the plaintiff we were taking the store that day and that he was going to get his stuff out. Plaintiff stated that he didn't have any place to move it. I told him that he had had time to find a place or to sell the stuff. Plaintiff stated that he did not have any place to put it and couldn't afford to

store it. I told him that the goods would have to be taken out that day since repairs were going to be started in the store. I told plaintiff that he had a double garage to put it in, but he only sneered. We couldn't put the goods and merchandise on the sidewalk; plaintiff would have sued us for damages if anything had happened to it, and there is a lot of traffic on 17th Street. Plaintiff consistently refused to take his merchandise; something had to be done. The merchandise was in the store up to about October 15th, so we finally phoned for the warehouseman to move the property into the warehouse. The day the property was moved the plaintiff did not come to the store, but he and his wife watched that store. They were hanging around to find out what was going to happen. They knew that the merchandise was being moved. The light fixtures were taken down by the Simpson Electric Company and put in the basement. The awning was taken down by the Cheyenne Tent and Awning Company. The other fixtures and merchandise were stored with the Midwest Transfer and Storage Company."

It appears that the warehouse receipt and contract with the Midwest Transfer and Storage Company is dated October 24, 1947. It states that it is a receipt for the account of the Bresnahen Estate. But the receipt was signed by Winnifred Bresnahen "for owner". It further appears that creditors of plaintiff attached the property in the warehouse and sold it to satisfy their claims. Some other material facts will be mentioned hereafter.

I. Election of Remedies.

Counsel for plaintiff has argued the question of election of remedies at length. He proceeds on the theory that defendants had two remedies, namely, first, the remedy of peaceable entry as mentioned in 52 C. J. S. 580 and discussed at some length in Welch vs. Rice and

Faivre, 61 Wyo. 511, 159 Pac. 2d 502 and, second, the remedy provided under the statute (Section 14-1501 W. C. S. 1945 and subsequent sections) in relation to what is commonly called forcible entry and detainer; that the two remedies are inconsistent and defendants having elected to bring an action under the statute were barred from thereafter exercising the remedy of re-entry; that hence the re-entry was unlawful and defendants, by making it and at the same time taking possession of the merchandise, converted the latter to their own use. Counsel for the defendants, on the other hand, contend that the doctrine of election of remedies applies only to two actions or proceedings in court and has no application in the case at bar in which one of the proceedings was outside of court. They cite us to Walters vs. City of Ottawa, 240 Ill. 259, 88 N. E. 651, 654, and to some excerpts from 18 Am. Jur. pages 131, 132, 134, 150, 162, and 168. It is true that the doctrine has generally been applied to remedies in court, but we are not prepared to hold and we need not decide whether or not it is of that limited application. It has at least been discussed, as noted hereafter, though not applied, in connection with cases in which there was a remedy outside of court and another remedy by a proceeding in court. While we speak of the "right" of re-entry, it is also in a sense at least a remedy; the meanings here may be said to coalesce, or the remedy may be said to consist of the exercise of the right, that is to say the enforcement thereof—in this case, the actual re-entry. See Blakemore vs. Cooper, 15 N. D. 5, 106 N .W. 566, 569; Soderstrom vs. Curry & Whyte, 143 Minn. 154, 173 N. W. 649, 651. It was said in Knapp, Stout & Co. vs. McCaffrey, 177 U. S. 638, 20 S. Ct. 824, 827, 44 L. Ed. 921, that a remedy does not necessarily imply an action. Whether or not the doctrine of election of remedies applies in a particular case is another question. That doctrine has no appli-

cation except in cases where the remedies are inconsistent. 18 Am. Jur. 134. It does not apply if the remedies are cumulative. 18 Am. Jur. 136. No authorities have been cited that the doctrine applies in a case like that at bar. In 52 C. J. S. 519, it is said that: "The exercise of the right of distraint (for rent outside of court) does not necessarily preclude other remedies if it proves inadequate to satisfy the full rent claim." In Mercantile Mortgage Co. vs. Chin Ah Len, 3 Cal. App. 2d 504, 36 Pac. 2d 817, it was held that to give notice of default and commence proceedings for sale of property under a deed of trust, which empowered the trustee to enter the premises at any time to operate the properties and collect rents, was not inconsistent with a suit —also provided for in the trust deed—for specific performance to take possession of the premises for the purpose of collecting rents and preserving property. In the case of State ex rel. vs. Panama City, 126 Fla. 776, 171 So. 760, it was held that the remedy provided by the statute for enforcing delinquent taxes by tax sale was not inconsistent with the remedy in chancery to collect the tax. In 52 C. J. S. 616, it is stated as follows: "An unlawful detainer or other summary proceeding provided by statute for recovery of possession by a landlord from a tenant constitutes simply an additional and cumulative remedy." The rule was discussed and upheld in Allen vs. Houn, 29 Wyo. 413, 213 Pac. 757. If two remedies are inconsistent so that one will bar the other, that must be true reciprocally. If in the case at bar the defendants had first attempted to make a peaceable re-entry of their property but had failed in regaining possession, it could hardly be contended that they would not thereafter have had the right to bring an action of forcible entry and detainer. In this case, their first proceeding was by an action in the Justice Court, but they failed to get possession of their property under that proceedings by reason of the

fact that plaintiff took an appeal from the judgment of the Justice of the Peace. Hence, applying the rule contended for reciprocally, the result should be the same as in a case of failure to obtain possession of their property by a peaceable entry outside of court. Evidence of that proceeding in court was, of course, relevant in the case, not only as showing a demand made on the plaintiff for possession, but also to show that the defendants at that time at least made no claim to any part of the merchandise of the plaintiff. We think, accordingly, that the contention of counsel for the plaintiff in this connection must be overruled.

II. Conversion of Property by Landlords on Reentry.

As stated before, plaintiff had a lease on the premises in question which expired in May 1945. No subsequent lease was issued but the plaintiff held over. He accordingly comes within the provisions of Section 66-220 W. C. S. 1945, reading as follows:

"No lease which shall have expired by its own limitation shall be again renewed except by express contract in writing, signed by the parties thereto, whether the original lease be written or verbal. Nor shall any other tenancy than that by sufferance exist after the termination of the original lease, unless created as aforesaid, by express contract in writing."

This section and Section 66-219 W. C. S. 1945 were considered at considerable length in the case of Welch vs. Rice & Faivre, 61 Wyo. 511, 159 Pac. 2d 502. We therein reviewed previous decisions of this court as well as other authorities and held that the tenants in that case were such by sufferance and that the landlord had the right to take peaceable posession of the property by locking the doors in the absence of the tenants. In 36 C. J. 601, 602, it is stated: "A rightful reentry by the landlord does not in itself constitute a conversion of the personal property of the tenants upon the prem-

ises." To that effect is Peck vs. Knox, 31 N. Y. Superior Ct. 311. Backus vs. West, 104 Ore. 129, 205 Pac. 533 involved a contractual right of re-entry. The landlord in that case had warned the tenant to keep away from the premises. Notwithstanding that, he was found not guilty of conversion of the property which had been left on the premises. The court said, among other things:

"The statement, 'You can't set foot on these premises or come on these premises without an officer of the law,' does not constitute a conversion of the goods that the plaintiff may have had on the land. As we have seen, the defendants had a right to reenter and take possession of the land for default in payment of the rent, and to terminate the lease and expel or remove all persons from the premises. The defendants therefore had a right to maintain that possession. They had done only what the parties agreed they had a right to do; and at least the maintenance of that contractual right cannot amount to a conversion of what goods of the plaintiff happened to be on the land. With the stipulated right to remove all persons from the premises was necessarily included the right to remove their goods, which does not involve conversion of them, if done with reasonable dispatch. The well-considered opinion of Mr. Justice Bean in Lee Tung v. Burkhart, 59 Or. 194, 116 Pac. 1066, presents a parallel case and is conclusive of the issue here. See, also, Hart v. Oregon Laundry Co., 91 Or. 324, 178 Pac. 932.

"Another view is that keeping the plaintiff out of the possession of his goods temporarily was a necessary incident of the undoubted right of the defendants to resume and maintain possession of the land."

At least up to and including the time when defendants took possession of the premises in question, it cannot be said that they were guilty of conversion of the property involved herein. Counsel for plaintiff contends that the defendants by subsequent acts, however, are clearly guilty thereof. He says that during that time no responsibility or duty whatever as to the goods and

merchandise rested upon the plaintiff; that he had the right to remain silent, do nothing, and make defendants responsible to see that he obtained possession of his goods. Counsel lays stress upon the fact that the warehouse receipt recited that it should be produced when possession of the property should be demanded; that accordingly it was the duty of defendants to deliver the receipt to plaintiff, and that the failure to do so constituted conversion of the property. It must, of course, be conceded that prudence should have suggested to defendants to make such delivery. It is doubtful, however, in view of the fact that plaintiff stated that he could not afford to store the property in the warehouse, and the fact of the subsequent attachment thereof by plaintiff's creditors, that such delivery would have been of any benefit to the plaintiff. This suggests caution in holding that the mere fact of the non-delivery of the warehouse receipt should, as a matter of law and in disregard of the holding of the jury, be held to constitute conversion of the property, especially since all other evidence in the case shows that the defendants were anxious to get rid of it and made no claim to it of any kind whatever. It is said in 65 C. J. 13:

"To constitute a conversion there must be either some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, or some act done which has the effect of destroying or changing its character, or, as otherwise expressed, there must be a wrongful taking or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser."

We do not think that the jury were required to find that the defendants were guilty of any of the positive acts here mentioned. In the case of Bowe vs. Palmer, 36 Utah 214, 102 Pac. 1007, 1009, 24 L. R. A., N. S. 226, the court stated: "Merely to interfere with another's property, or his rights therein or thereto, will not sus-

tain an action of trover, unless such acts are 'done with the intention of depriving the owner permanently or temporarily of his property'." It is clear in this case that defendants had no intention whatever of depriving the plaintiff of his goods and merchandise. The withholding of the warehouse receipt was not, we think, coupled with such serious consequences as counsel would have us believe. It shows on its face that the property was held *for* the owner, showing that the defendants did not, and did not intend to, exercise any dominion over the property. The receipt contains the following statement: "This Warehouse Receipt and a Written Order shall be presented when any goods are to be withdrawn. Goods will be delivered only upon receipt of a written order signed by the person in whose name they are stored. One day's notice is required for access to or delivery of goods." It would seem that the receipt was non-negotiable within the definition of Section 42-104 W. C. S. 1945, reading as follows: "A receipt in which it is stated that the goods received will be delivered to the depositor, or to any other specified person, is a non-negotiable receipt." Section 42-211 W. C. S. 1945 makes provision in case a party other than the depositor claims the goods. In 67 C. J. 535, it is said, among other things, that the warehouseman:

"may deliver the property to a third person having the paramount title and set up such title and delivery as a defense in an action by the bailor for failure to deliver to him, or may retain the goods for one having paramount title and refuse delivery to the bailor, * * * A warehouseman may also rely upon the adverse title of a third person where the bailor was himself the mere agent of the owner of the property and a delivery to him has been forbidden by his principal."

The testimony indicates that the jury were justified in finding that plaintiff knew where the property had been taken, and in view of the fact that the merchan-

dise was deposited *for* the owner, a simple demand by plaintiff on the warehouseman, together with the payment of the amount due for storage, would doubtless, before the property was attached, have secured him the possession thereof. We need not decide that plaintiff should have made a demand on the warehouseman for his merchandise in the warehouse, but what we have said shows that, as already stated, the non-delivery of the warehouse receipt was not of such serious consequence to plaintiff as counsel for plaintiff seems to think, but that, on the contrary, a slight effort on his part would have secured him the possession of his property.

As to what should be done in connection with a tenant's goods which remain on the premises after the landlord reenters is discussed at some length in 51 C. J. S. 986-990, 52 C. J. S. 713, and Annotation in 148 A. L. R. 649, 657. Generally speaking, the standard of responsibility of the landlord in that connection is that of reasonableness of conduct under the particular circumstances confronting him and in the light of a like standard of responsibility on the part of the tenant. If a plaintiff in a particular action in that connection has failed to properly meet his own responsibilities and such failure is the proximate cause or one of the proximate causes of his loss, he cannot of course prevail. See Angel vs. Black Band Consolidated Coal Company, 96 W. Va. 47, 122 S. E. 274. Defendants moved some shelves and other property into the basement, probably to save plaintiff some storage charges, and it would seem that this was beneficial to the plaintiff in view of the fact that he stated that he could not afford to pay to store them. The main merchandise was finally moved to a warehouse. That has been held to be proper. Mayer vs. Chilton Avenue Building Corp., 321 Pa. 193, 183 Atl. 773. See also Shefelker vs. First Natl. Bank, 207 Wis. 510, 250 N. W. 870; Ann. 148 A. L. R. 655.

We are inclined to think that the jury were justified in finding that defendants did all that could reasonably be expected of them in regard to the property except, of course, that defendants should have delivered or tendered to plaintiff the warehouse receipt, if he was willing to receive it and act upon it to repossess himself of his merchandise. However, there is no evidence in the record that defendants deliberately and purposely withheld the warehouse receipt in order to exercise dominion over the property. The jury were justified in finding that at most the non-delivery or tender thereof was due to negligence. In the case of Lund vs. Keller, 203 Wis. 458, 233 N. W. 769, 771, the court said that the act of the defendant was

"only negligent. He breached his contract. But neither negligence, active or passive, nor mere breach of contract, although it results in loss of property, constitute conversion. 38 Cyc. p. 2008; 26 Ruling Case Law, p. 1112. There must be intent to convert the property to one's own use, or at least some other wrongful intent indicative of assumption of ownership of or dominion over the property. 26 Ruling Case Law, p. 1111. This case is entirely wanting in evidence of such intent."

And that is true in the case at bar. See further Lee Tung vs. Burkhart, 59 Ore. 194, 116 Pac. 1066; Edinburg vs. Allen Squire Co., 299 Mass. 206, 12 N. E. 2d 718, 721; Evans vs. Mason, 64 N. H. 98, 5 Atl. 766; Annotation 148 A. L. R. 654. In 53 Am. Jur. 821, it is said:

"Some affirmative act on the part of the defendant is usually regarded as necessary to constitute a conversion. A mere intention to do a particular act, or a mere non-feasance, even though it is a neglect of a legal duty, is ordinarily insufficient to support the maintenance of an action for conversion."

And in the Annotation in 116 A. L. R. 871, it is said: "It is a general rule, supported by numerous decisions, that an action for conversion cannot be based on nega-

tive conduct, such as passive negligence or nonfeasance." Aside from that, plaintiff himself testified as follows:

"Q. When was that (the goods) taken from you, October 1?

A. That is right.

Q. You have never claimed the property since then?

A. That is right."

It is quite apparent that plaintiff had made up his mind that commencing October 1st, he would hold defendants responsible for the value of the property plus punitive damages. A delivery or tender to plaintiff of the warehouse receipt or of property left in the basement would, in face of that attitude, have been wholly futile. To hold the defendants liable in damages for the neglect of performing a wholly useless act would be tolerated under no rule or principle of either law or justice. Furthermore, defendants could rightfully as already fully shown, take possession of the store in question. Plaintiff knew that or should have known it. Yet, he repeatedly and continuously during a number of months neglected and refused to move his goods, and he furthermore stated, even at the time when defendants took possession of the store, that he had no place to put them and could not afford to store them. We think that these facts and circumstances justified the jury in finding that the plaintiff, by reason thereof, voluntarily left the goods in the temporary possession of the defendants, and that, when he wanted the property back, he should have demanded it from the defendants. The evidence in the case warranted the jury in inferring that if such demand had been made, the warehouse receipt and the property left in the store would have been promptly delivered to the plaintiff . In 65 C. J. 43-45, it is stated:

386

"Where the original taker acquired possession of the property rightfully and has neither asserted title to it nor exercised dominion over it inconsistent with the rights of plaintiff, ordinarily a demand and refusal are necessary to establish a conversion of the property. Where the person in possession has committed no independent act of conversion, a rightful possession in him continues as such until it is transformed into a wrongful detention by a demand for the property and a refusal to deliver it."

Smusch vs. Kohn, 22 Misc. Rep. 344, 49 N. Y. S. 176, and Kull vs. Mastbaum & Fleisher, 269 Pa. 202, 112 Atl. 631 seems to indicate that a demand should be made upon the landlord by the tenant who has been ousted. Warwick vs. Macchiaroli, 96 Cal. App. 133, 273 Pac. 1109 holds that a landlord, upon rightful re-entry of his premises, becomes an involuntary bailee of the goods of a tenant. That seems to be an apt designation of the situation of the landlord in such a case. And it is generally held that ordinarily a demand should be made by a bailor upon the bailee for the return of his goods before an action for conversion against the bailee will lie. See 8 C. J. S. 330. It would seem that the foregoing authorities are applicable in the case at bar. We accordingly think that there is no justification in the record to nullify the verdict of the jury herein. The judgment of the district court must accordingly be *affirmed.*

RINER, C. J., and KIMBALL, J., concur.

## ON PETITION FOR REHEARING
(March 22nd, 1949; 203 Pac. 2d. 966)

For former opinion, see 202 P. 2d 663.

James A. Greenwood, of Cheyenne, in support of petition for rehearing.

## OPINION

BLUME, Justice.

Counsel for the plaintiff in this case has filed a petition for rehearing herein. It is accompanied by a brief, in part at least rather acrimonious. We suggest that

his acrimonious feelings should be directed against the jury rather than against the court. All we attempted to do in this case was to determine under the rules of law whether or not the jury were justified in returning a verdict in favor of the defendants in this case. Taking all the facts and circumstances into consideration, we believe that they were so justified.

Counsel for the plaintiff says that the instructions given by the trial court were the law in this case. We have no quarrel with that contention. He complains that we paid no attention to them and did not even mention them in our opinion. We are accustomed to discuss every point deemed vital in a case, but do not necessarily discuss other points. It is quite evident that the writer of the original opinion failed to grasp what significance counsel for plaintiff attaches to the instructions as the law of the case, thinking doubtless that nothing said in the opinion was inconsistent with the instructions. Counsel for the defendants did not even refer to them, they evidently, too, deeming them of no particular significance herein. Reading over again what counsel for plaintiff stated in his original brief, it is believed that discussion of the specific point here mentioned was excusable. However, we shall attempt to make amends for sins of omission, if any, in the past. Counsel refers to Instructions 2 and 9, which are as follows:

"Instruction No. 2. Conversion consists of an act, or acts, in derogation of a person's possessory rights to personal property, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion."

"Instruction No. 9. If you find from the preponderance of the evidence that defendants did convert Plaintiff's property, then Plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence,

knowledge or ignorance of the Defendants in converting Plaintiff's property."

There is nothing, we think, in our original opinion which is in any way inconsistent with these instructions. We think counsel has given them a meaning which they do not bear. He thinks that in view of Instruction No. 2 the liability of defendants herein is clear and unquestionable—so clear and unquestionable in fact (see below) that his ideas are best represented by a simple syllogism reading about as follows:

All who are guilty of wrongful exercise or assumption of authority over another's goods are guilty of conversion.

Defendants were guilty of wrongful exercise or assumption of authority over the plaintiff's goods.
Therefore, defendants were guilty of conversion of plaintiff's goods.

The trouble is that the second sentence, the minor premise of the syllogism, presents the crux in this case and is based upon a pure assumption. The jury found it to be false and, after examining the evidence, we are unable to say that their finding was unjustified. Counsel seems to overlook or at least ignore the force of the term "wrongful" used in Instruction No. 2. He states in his original brief in connection with the discussion of Instruction No. 2 that: "The record shows, absolutely free of any controversy, that the defendants did, on October 1, 1947, wrongfully exercise and assume authority over plaintiff's stock of merchandise," etc. If that is true, it is rather strange that counsel did not ask the trial court for a peremptory instruction to find for the plaintiff, leaving only the question of the amount of damages to the jury. But he did not do so. His convictions as to the right or the wrong herein have in part at least been progressive. Counsel's emphasis was laid upon the evidence, not upon the instruction, so that it cannot be altogether surprising

that the latter was not discussed by us. The term "wrongful" opens wide the field of discussion, and all we really did was merely to elaborate on what the trial court stated in Instruction No. 2 and to determine what facts and elements might be considered in finding the existence of wrongful exercise or assumption of authority over the plaintiff's goods in this case.

Counsel ,referring to Instruction No. 9, states: "In the light of the instruction, what justification is there for emphasizing the evidence relating to the intention of the defendants in taking possession of plaintiff's property or of citing authorities that stress the matter of intention in connection with conversion in the case at bar." Counsel seems to think that Instruction No. 9 is contrary to cases cited by us in the original opinion. It—the instruction—is based upon the basic premise—assumption—which counsel has seemingly overlooked, that the defendants in fact converted the property of the plaintiff as defined in Instruction No. 2. We pointed out in the original opinion that it has been held that intention is one of the elements to be considered in determining as to whether or not a conversion exists. See the case of Bowe vs. Palmer, 36 Utah 214, 102 Pac. 1007, 1009, cited in the original opinion. And we think that this court is hardly required to apologize for citing and quoting from opinions of other courts which are applicable in a case. Instruction No. 3 states that one whose property is converted is entitled to sue for the value thereof. See comment on this below. Instruction No. 6 states that it is immaterial if a party's property is converted whether the plaintiff was rightfully or wrongfully in possession of the space where his property is located. There is nothing, we think, in the original opinion which is inconsistent therewith.

Counsel again argues, as he did originally, that when the defendants brought an action for forcible entry

and detainer, they elected their remedy and were bound thereby. We gave this matter rather thoughtful consideration and fully discussed it in the original opinion. Counsel seems to think that we committed a fundamental error in connection with this point. If this were so, we should not, and would not, let such error stand without correction lest it haunt this court in the future. We do not, however, think that we committed an error, unless all the authorities on the subject are wrong. Counsel says in part: "The opinion, in discussing the question of the election of remedies ignores a controlling factor, namely, that when one has pursued an existing remedy to a judgment, he cannot thereafter pursue another or different remedy here in court or out of court to obtain a different objective. See 18 Am. Jur. 143, Section 20." The authority cited states in part as follows: "It would seem that a litigant who has resorted to a particular remedy to prosecute his rights or redress his wrong sufficiently manifests his choice of, and reliance upon, that remedy when he presses his suit to judgment and decree. Most courts would regard such action as decisive." We have no reason to disagree with that statement. The trouble is that it has no application in this case. It appears as a discussion under the topic "Requisites and Indicia of Election", which appears in 18 Am. Jur. 139. In other words, the provision applies when the doctrine of election of remedy is applicable. In this case, as we fully pointed out in the original opinion, that doctrine is not applicable for it applies only when the remedies are repugnant and inconsistent. 18 Am. Jur. 134, 136. The remedies in this case, as fully pointed out, with a number of authorities cited, were not inconsistent, but cumulative until complete satisfaction by one or the other of the remedies. It would be superfluous to again cite the authorities. See, in addition to those previously cited, Scott vs. Hewitt, 127 Tex. 31, 90 S. W. 2d 816,

103 A. L. R. 977; Harper vs. Quinlan, 159 Pa. Super. 367, 48 Atl. 2d 113.

Counsel contends that the defendants in this case were not the landlord and should be treated in this litigation as total strangers. If that were so, the defendants would be liable for conversion herein as a matter of course. We hardly think that counsel's contention in the original brief went quite as far as it does now. He there contended, as we understood it, that when a trustee such as Winnifred Bresnahen, trustee of the Bresnahen Estate, commits a tort, the estate is not liable, but the trustee committing such tort is liable personally. We had no occasion to refer to that point in our original opinion. The contention now made is wholly without merit. It could not be otherwise. The Bresnahen Estate is not a living person. It is represented by someone, namely the defendants in this case, the beneficiaries of the state. The Bresnahen Estate as such could not rent or occupy any premises. If it is done at all, it must be done by the beneficiaries of the estate either personally or by agent, and they necessarily must be treated as the landlord in a case such as that before us.

Counsel refers to the fact that rental was deposited in the district court for a period after the time that the defendants in this case took possession of the premises in question, and that counsel for the defendants collected this money. Complaint is made that we said nothing about this. Counsel for the defendants by subsequently collecting that money could not change the status of the defendants as it became fixed at the time when they took possession of the premises in question here. The defendants, of course, were not entitled to any rent from the plaintiff after such possession was taken. Whether they received such rent or not was a question not directly involved in this action, which is

an action for conversion of personal property. We do not know upon what theory counsel for the defendants collected the money that had been deposited as above mentioned nor were we enlightened on the point by them. We discussed the matter after the original hearing, but inasmuch as it was not directly involved in this case, we deemed it best not to say anything about it. The decision in this case could not, and does not, determine that the money in question belongs to defendants.

Counsel argues that defendants could have placed the property on the sidewalk outside of the leased premises so that the plaintiff could then have taken possession of his property. But the evidence in this case shows that the leased premises in this case are situated on 17th Street in Cheyenne; that it is a crowded street, and that it would have been inadvisable, if not dangerous, to have placed the goods of plaintiff on the street. We referred to this evidence in the original opinion, and the jury doubtless had personal knowledge of the facts. It is clear, moreover, that if the defendants had placed the goods upon the sidewalk, as counsel now says should have been done, plaintiff would not have taken the property, since he, according to his own testimony, made no claim to the property after October 1, 1947—the time defendants took possession. He did not, as counsel correctly states, say in so many words that he would hold the defendants responsible for the value of the goods, but what he did say cannot be given any other meaning. It is true, of course, that the plaintiff had the right to sue for the value of his goods if they were in fact converted; nor did we intimate anything to the contrary in our original opinion. At the same time, plaintiff cannot expect to escape from the consequences of his determination to so sue if his theory of conversion turns out to be based upon premises that are unsound. The testimony

that he did not claim the property after October 1st may have been a slip of the tongue, but we take the record as we find it.

We think we have discussed and decided, in this and the original opinion, all questions properly and directly involved in this case, and we should not attempt to discuss or decide others. It is no source of pleasure to sustain the judgment of the trial court in an action such as that before us. The painful misfortune of one who is ousted from premises under unfortunate circumstances, partially, perhaps, arising out of the war, cannot be other than cause for regret. But the plaintiff has had his day in court before his peers. They have spoken and decided the facts against him. We cannot reverse them except for an error of law which we do not find. We see no reason, accordingly, to grant a rehearing and the petition therefor must be *denied.*

RINER, Ch. J., and KIMBALL, J., concur.